UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE RATLIFF, | Case No.  17-cv-02155-EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| JP MORGAN CHASE BANK N.A., et al., | Docket No. 20 |
| Defendants. | |

Plaintiff Lonnie Ratliff[1] has filed against multiple defendants, asserting claims for, *inter alia*, wrongful foreclosure, quiet title, violation of the Fair Debt Collection Practices Act ("FDCPA"), violation of the Fair Credit Reporting Act ("FCRA"), and violation of the California Business & Professions Code § 17200.  Currently pending before the Court is a motion to dismiss filed by four of the named defendants – *i.e.*, JPMorgan Chase Bank, N.A. ("Chase"); Homesales, Inc.; EMC Mortgage, LLC ("EMC"); and Mortgage Electronic Registration Systems, Inc. ("MERS").[2]  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to dismiss.

## I.  <u>FACTUAL & PROCEDURAL BACKGROUND</u>

In his complaint, Mr. Ratliff alleges as follows.

---

[1] Previously, Mr. Ratliff represented himself in these proceedings.  Currently, he is represented by counsel.

[2] The remaining defendants named in the complaint are: Mortgage Store Financial, Inc. ("Mortgage Store"); Impac Mortgage Holdings Inc. ("Impac"); Deutsche Bank National Trust Company ("Deutsche Bank"), as Trustee for Securitized Trust IMPAC CMB 2003-12 Trust ("Impac Trust"); Executive Trustee Services LLC ("ETS"); and First American Title Insurance Co. ("First American").  None of these defendants have made an appearance in the case as of yet. It is not clear that any of these defendants has been served.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Mr. Ratliff's lawsuit concerns certain real property that he owned in Oakland, California.

2  The real property has both a front unit and a back unit.  *See* Compl. ¶ 2.

3    In October 2003, Mr. Ratliff obtained a $630,000 loan from Mortgage Store.  *See* Compl. ¶

4  39.  Chase appears to have been servicer for the $630,000 loan.  *See* Compl., Ex. G (Forensic

5  Rept. at 2).

6    The loan was secured by a deed of trust ("DOT") on the Oakland property.  *See* Compl. ¶

7  39 & Ex. B (DOT at 2).  The trustee named on the DOT was First American.  *See* Compl., Ex. B

8  (DOT at 2).  In addition, MERS was identified on the DOT as "a separate corporation that is

9  acting solely as a nominee for Lender *and* Lender's successors and assigns.  MERS is the

10  beneficiary under this Security Instrument."  Compl., Ex. B (DOT at 2) (emphasis added).

11    At some point, Mortgage Store transferred the loan/DOT to the Impac Trust but the

12  transfer, according to Plaintiff, was not properly effected.  *See, e.g.*, Compl. ¶ 28 (alleging that

13  "there was no 'True Sale' of Plaintiff's Tangible Note, a circumstance whereby the MORTGAGE

14  STORE sold Plaintiff's Tangible Note to the 'buyer/seller' IMPAC Mortgage Holdings, Inc. in an

15  ordinary course of business") (emphasis omitted); Compl. ¶ 29 (alleging that "The MORTGAGE

16  STORE, INC. never negotiated the Tangible Note by operation of law for full value in accordance

17  with all applicable law to IMPAC MORTGAGE HOLDINGS, INC.").  The closing date for

18  transfer of loans to the Impac Trust was supposed to be in December 2003.  *See* Compl. ¶ 33.

19    Although Mr. Ratliff takes the position, in his complaint, that there was no proper transfer

20  to the securitized trust, he also argues, at least in his opposition brief, that, because of the transfer

21  to the securitized trust, "only the Trust Pool[,] or Deutsche Bank as its trustee, had the right to

22  foreclose as they were the beneficiaries of Plaintiffs' [sic] mortgage at that point," Opp'n at 12,

23  and not MERS.  *See* Opp'n at 3 (arguing that "MERS listed itself as the beneficiary despite the

24  fact that, at this point, the Impac . . . Trust . . . was the true beneficiary of Plaintiff's mortgage and

25  MERS was a stranger to Plaintiff's DOT").

26    On July 21, 2005 – *i.e.*, several years after the closing date for transfer of loans to the

27  Impac Trust – MERS signed a substitution of trustee in which it designated ETS as the new trustee

28  in place of First American.  *See* Defs.' RJN, Ex. A (substitution of trustee).

**United States District Court**
For the Northern District of California

On the same day, ETS – acting at MERS's behest – issued a notice of default on the real property at issue. *See* Compl., Ex. I (notice of default). This notice of default was subsequently rescinded in August 2005. *See* Compl., Ex. J (rescission).

On February 6, 2006, another notice of default was issued. As above, the notice indicated that ETS was taking action on behalf of MERS. *See* Compl., Ex. K (notice of default).

Several months later, in May 2006, ETS had a notice of trustee's sale recorded against the real property. *See* Compl., Ex. L (notice of trustee's sale). For an unknown reason, that sale did not take place and another notice of trustee's sale issued in August 2007. *See* Compl., Ex. M (notice of trustee's sale).

Ultimately, the real property was sold in October 2007. The trustee's deed upon sale reflects that the ETS, as trustee, conveyed the property to EMC. *See* Compl., Ex. N (trustee's deed upon sale).

Many years later, in October 2013, a grant deed was recorded transferring the real property from EMC to Homesales. *See* Compl., Ex. O (grant deed).

In November 2013, Homesales filed an unlawful detainer action against Mr. Ratliff in state court with respect to the front unit of the real property. In February 2014, Homesales initiated a second unlawful detainer action, this time with respect to the back unit. *See* Compl. ¶¶ 50, 55.

In March 2017, a judgment was entered in favor of Homesales on the front unit. *See* Compl. ¶ 52. The status of the back unit has not yet been resolved. *See* Compl. ¶ 55.

In January 2017 – prior to the final judgment on the front unit – Mr. Ratliff filed a Chapter 7 petition in bankruptcy court. *See* Compl. ¶ 56. Mr. Ratliff identified Chase in one of his bankruptcy filings as a creditor (even though, as indicated above, Chase appears to have been only the servicer of the loan at issue). *See In re Ratliff*, No. 17-40264 (N.D. Cal. Bankr. Ct.) (Docket No. 12, at 15) (summary of assets and liabilities) (stating that Homesales had a secured claim on the real property at issue in the amount of approximately $738,000 and that Chase had a secured claim on the same real property in the same amount).

In what appears to be a response to the bankrupting filing, Chase sent a letter to Mr. Ratliff in February 2017. The letter states in relevant part as follows:

**United States District Court**
For the Northern District of California

1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28

**Here's how your recent bankruptcy filing affects your account**

Account:                              [REDACTED]
Bankruptcy Case Number:    17-40264
Property Address               2304 9th Ave
                                          Oakland CA 94606

Dear Lonnie Ratliff Jr[.]:

We recently received notification that you've filed for bankruptcy.

**If you've filed Chapter 7 bankruptcy**, please call us at one of the numbers below to discuss plans for the property. We'd like to understand if you want to keep the property and if you're requesting to reaffirm the debt, meaning the debt will not be discharged and you'll still be responsible for the balance on your mortgage loan.

Reaffirming a debt is a serious financial decision. You should determine if it's in your best interest and if you can afford to make the payments on the debt. . . .

To request a reaffirmation agreement, you should call us at one of the numbers below. We don't consider your stated intention within your bankruptcy documents to be a request to enter into a reaffirmation agreement or a reaffirmation of the debt.

We don't report full contractual information to the credit reporting agencies on bankruptcy accounts. On accounts included in Chapter 7 bankruptcy and if the debt isn't reaffirmed, we'll stop reporting on the discharged debt after the bankruptcy case is closed regardless of whether the loan is current or is brought current at a later date.

**If you're interested in keeping the property** and your loan isn't current, homeowner assistance options may be available. Please call us at one of the numbers below to discuss your options. . . .

If you surrender the property, the title won't automatically transfer and you'll still be responsible for any post-petition taxes, insurance and Homeowners Association dues until the title is transferred. . . .

. . . .

**If you don't want to receive monthly statements**
We'll continue to send you monthly statements for informational purposes, but not as an attempt to impose personal liability for the debt. . . .

**Payments on your account are voluntary**
Any payment we receive is voluntary and won't be considered an assumption or reaffirmation of the debt. . . .

Compl., Ex. W (letter) (emphasis in original).

Mr. Ratliff was confused as a result of the Chase letter – *i.e.*, Chase was claiming that a

4

United States District Court
For the Northern District of California

debt was still owed but Homesales claimed to be the owner of the real property at issue after a foreclosure. *See* Compl. ¶ 58. Accordingly, Mr. Ratliff hired a person to do a "Forensic Chain of Title Securitization Analysis." Compl. ¶ 58; *see also* Compl., Ex. G (forensic report).

The forensic report notes that Mr. Ratliff's loan with Mortgage Store "may have been sold, transferred, assigned and securitized into" the Impac Trust. Compl., Ex. G (Forensic Report at 11); *see also* Compl., Ex. G (Forensic Report at 8) (stating that "[t]he Note may have been securitized into IMPAC CMB Trust 2003-12"). This statement appears to be based on, *inter alia*, an allonge on the loan reflecting a transfer of the loan from Mortgage Store to Impac Funding Corporation. Mr. Ratliff ignores the fact that the forensic report also makes reference to a second allonge indicating that Impac Funding Corporation at some point then transferred the loan to EMC. As noted above, EMC was the purchaser of the real property at the trustee's sale in October 2007, and several years later EMC transferred the property to Homesales (thus confirming the chain of ownership to Homesales).

The basic thrust of Mr. Ratliff's complaint is that Homesales has no right to the real property at issue because the property was conveyed by companies who did not have an ownership interest in the real property. Mr. Ratliff seems to want both damages based on the wrongful foreclosure as well as a "return" of the property back to him (without any accompanying debt). *See, e.g.*, Compl. ¶¶ 35-36.

The specific claims asserted by Mr. Ratliff in the complaint are as follows:

(1)      Wrongful foreclosure (against Chase, EMC, Mortgage Store, Impac, Deutsche Bank, MERS, ETS, and First American).

(2)      Fraud in the concealment (Mortgage Store).

(3)      Fraud in the inducement (Chase, EMC, Mortgage Store, Deutsche Bank, MERS, ETS, and First American).

(4)      Unconscionable contract (Mortgage Store).

(5)      Breach of contract (Mortgage Store and MERS).

(6)      Breach of fiduciary duty (Mortgage Store and MERS).

(7)      Quiet title (Chase and Homesales).

(8)     Violation of the FDCPA (Chase, Impac, ETS, EMC, and First American).

(9)     Violation of the Rosenthal Fair Debt Collection Practices Act (Chase, Impac, ETS, EMC, and First American).

(10)    Violation of the FCRA and the California Consumer Credit Reporting Agencies Act (Chase, Impac, ETS, EMC, and First American).

(11)    Intentional interference with prospective economic advantage (all Defendants).

(12)    Libel and slander (all Defendants).

(13)    Violation of § 17200 (all Defendants).

(14)    Injunctive relief (Homesales).

(15)    Declaratory relief (all Defendants).

## II.    DISCUSSION

A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

B.    Claims at Issue

As noted above, the moving defendants for purposes of the present motion are Chase,

United States District Court
For the Northern District of California

1  EMC, Homesales, and MERS.  The moving defendants – hereinafter, collectively, "Defendants"

2  for ease of reference – have moved for dismissal of all claims asserted against them.  Defendants

3  argue that the claims are untimely and that res judicata is a bar to the claims as well.  Defendants

4  also make some arguments that are specific as to each claim.

5     In his opposition, Mr. Ratliff does respond to the statute-of-limitations and res judicata

6  defenses.  However, notably, he does not otherwise offer arguments as to each of the claims

7  asserted against Defendants.  Rather, he makes arguments with respect to only the following

8  claims: wrongful foreclosure, quiet title, violation of § 17200, violation of the FDCPA, and

9  violation of the FCRA.  Given this circumstance, the Court dismisses with prejudice the remaining

10  claims asserted against Defendants, namely, fraud in the inducement, breach of contract, breach of

11  fiduciary duty, violation of the state analogs to the FDCPA and FCRA, intentional interference

12  with prospective economic advantage, libel and slander, declaratory relief, and injunctive relief.

13     The Court now turns to the issues of (1) statute of limitations, (2) res judicata, and (3)

14  failure to state a claim for relief.

15  C.     Statute of Limitations

16     While the statute of limitations is an affirmative defense and "complaints do not ordinarily

17  need to allege the non-availability of affirmative defenses," case law is clear that "the statute of

18  limitations may be raised in a motion to dismiss '[w]hen the running of the statute is apparent

19  from the face of the complaint.'"  *Baldain v. Am. Home Mortg. Serv'g, Inc.*, 2010 U.S. Dist.

20  LEXIS 5671, at *13 (E.D. Cal. Jan. 5, 2010).  Here, the running of the statute of limitations is

21  clear from the face of the complaint.  The trustee's sale took place years back in October 2007.

22  Mr. Ratliff did not initiate this lawsuit until April 2017.  Mr. Ratliff has failed to point to any

23  cause of action that has a statute of limitations of more than nine years.

24     Implicitly recognizing such, Mr. Ratliff has invoked the delayed discovery rule and

25  equitable tolling in his complaint.  *See* Compl. ¶¶ 1, 48.  But his invocation is entirely conclusory;

26  he has made no concrete factual allegations to support either theory in his complaint.  *See, e.g.*,

27  Compl. ¶ 48 ("Using all resources available to him at that time, Plaintiff nevertheless could not

28  have discovered, despite the use of due diligence, the true facts of the circuitous and illegal

7

United States District Court
For the Northern District of California

1    journey taken by his Note and Deed of Trust between October 15, 2003 [the loan date] and

2    October 2, 2007, the date of the Trustee's Sale of his home.").  Moreover, this Court's order

3    denying the request for a TRO specifically questioned "Mr. Ratliff's contention that he only

4    recently discovered new facts showing that illegal conduct took place . . . . . The forensic audit

5    report that he has attached to his complaint (Exhibit G) indicates that it was prepared based on a

6    publicly available online database."  Docket No. 15 (Order at 2).

7          In his opposition, Mr. Ratliff tries to overcome this obstacle by arguing that "Defendants

8    fundamentally err in their assertion that Plaintiff *could have* discovered these facts as such

9    information was publicly available.  In fact, the Bloomberg Professional Service database utilized

10   by Plaintiff's securitization auditor to locate Plaintiff's loan, requires a subscription and is

11   primarily used by financial professionals."  Opp'n at 8 (emphasis in original).  But this is a naked

12   claim made by Mr. Ratliff without any supporting evidence.  And in any event, even if the

13   Bloomberg database may be accessed only through subscription, that does not thereby mean that

14   Mr. Ratliff could not have tapped into that resource with some due diligence.  Notably, Mr. Ratliff

15   has not cited any supporting authority establishing that a subscription service is not fairly

16   encompassed within due diligence, especially here when Mr. Ratliff was able to access the

17   database in prosecuting this lawsuit.  Moreover, nothing prevented Mr. Ratliff from hiring a

18   forensic auditor earlier to conduct, *e.g.*, Bloomberg searches.

19         Admittedly, Mr. Ratliff does have one argument against a statute-of-limitations defense

20   that may have some merit.  That is, Mr. Ratliff argues that his quiet title and related claims against

21   Chase could not have been raised earlier because it was not until February 2017 that Chase

22   suggested it had an ownership interest in the loan still (*i.e.*, years after the trustee's sale in October

23   2007).  But even if there were no time bar to the quiet title and related claims against Chase, those

24   claims against Chase still fail for an independent reason, as discussed below.

25   D.    Res Judicata

26         In addition to a statute-of-limitations defense, Defendants assert a res judicata defense

27   based on three prior lawsuits filed by Mr. Ratliff.  In all three lawsuits, Mr. Ratliff essentially

28   contended that there was a wrongful foreclosure.  The three lawsuits are as follows:

8

- *Ratliff I.*  The named defendants included EMC and MERS.  Mr. Ratliff initiated the case in August 2008 and it was resolved in July 2009.  *See* Defs.' RJN, Exs. B-C (complaint and amended complaint to, *inter alia*, set aside foreclosure sale); Defs.' RJN, Ex. D (order sustaining demurrer) (taking note of "allegation that there was irregularity in the foreclosure sale that resulted in EMC obtaining title to the property"; stating that "[t]he facts do not show that Plaintiff has any enforceable right to reacquire the property" and that, "[b]ased on the facts alleged, Plaintiff cannot establish the element of causation, which is fatal to all of his claims based on loss of the property").

- *Ratliff II.*  The named defendants were EMC and MERS.  Mr. Ratliff initiated the case in April 2010 and it was resolved (on appeal) in December 2013.  *See* Defs.' RJN, Ex. E (complaint for, *inter alia*, wrongful foreclosure); Defs.'s RJN, Ex. F (order sustaining demurrer); *Ratliff v. Mortg.*, No. A132886, 2013 Cal. App. Unpub. LEXIS 8797 (Cal. Ct. App. Dec. 5, 2013) (concluding res judicata is a bar to the action against EMC).

- *Ratliff III.*  The named defendants were EMC and Homesales.  Mr. Ratliff initiated the case in June 2014 and it was resolved in November 2014.  *See* Defs.' RJN, Ex. H (complaint for, *inter alia*, violation of § 17200 and quiet title); Defs.' RJN, Ex. I (order sustaining demurrer) (taking note of concession that the issue of wrongful foreclosure was not being relitigated; stating that "Plaintiffs concede that Lonnie lost title to the properties in 2007 [and] Plaintiffs have not alleged how they lost money or property as a result of the alleged robo-signing of the Grant Deed in 2013").

The parties agree that, because the prior judgments were issued by state courts, state law on res judicata applies.  *See also Dunn v. Noe*, No. C-07-3559 JCS, 2007 U.S. Dist. LEXIS 86521, at *20-21 (N.D. Cal. Nov. 7, 2007) (stating that, "[w]here a prior action is a state court action, federal courts must give 'full faith and credit' to the judgment of the state court under 28 U.S.C. § 1738" and "[s]ection 1738 commands a federal court to accept the claim preclusion rules chosen by the state in which the judgment is taken").  "In California, res judicata precludes a plaintiff from litigating a claim if: [1] the claim relates to the same 'primary right' as a claim in a prior action, [2] the prior judgment was final and on the merits, and [3] the plaintiff was a party or in

9

United States District Court
For the Northern District of California

1    privity with a party in the prior action." *Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366

2    (9th Cir. 1985); *see also City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 762

3    (9th Cir. 2003).

4            Mr. Ratliff does not make any argument regarding the second and third elements of res

5    judicata.  Thus, the only dispute between the parties is whether the first element regarding

6    "primary right" has been satisfied.

7            According to Defendants, the primary right should be defined broadly as Mr. Ratliff's right

8    to be free from a wrongful foreclosure; clearly, both this case and the prior state court actions

9    implicated Mr. Ratliff's right to be free from a wrongful foreclosure.  In contrast, Mr. Ratliff

10   argues that the primary right should be defined narrowly; more specifically, here, the primary right

11   is his right to be free from a wrongful foreclosure *based on Defendants' lack of an ownership*

12   *interest* but, in the prior state court actions, the primary right was the right to be free from a

13   wrongful foreclosure *based on a different factual predicate – e.g.*, "(1) an auctioneer's

14   misrepresentations to [him] that [the] property would be sold back to [him]; (2) the fact that the

15   purchaser of [the] property (Defendant EMC . . . ) at the foreclosure sale did not actually possess

16   [the] promissory note; and (3) that the 2013 grant deed of [the] property [from EMC] to Defendant

17   Homesales was robo-signed."  Opp'n at 7.

18           In support of his position, Mr. Ratliff largely relies on *Branson v. Sun-Diamond Growers*

19   *of Cal.*, 24 Cal. App. 4th 327 (1994).  There, the state court discussed the primary rights theory

20   and quoted commentary on that theory by Professor Pomeroy: "'If two separate and distinct

21   primary rights could be invaded by one and the same wrong, *or if the single primary right should*

22   *be invaded by two distinct and separate legal wrongs*, in either case two causes of action would

23   result.'"  *Id.* at 342 (emphasis added).  *Cf., e.g.*, *Johnson v. City & Cty. of S.F.*, No. C-11-5081

24   EMC, 2013 U.S. Dist. LEXIS 53629, at *22 (N.D. Cal. Apr. 15, 2013) ("As this additional

25   allegation concerns a different period of time, and a different wrong allegedly committed by

26   Defendant in keeping Plaintiff from work, it would appear that it does not involve the same

27   primary right as the claims raised in Plaintiff's state court suit.").

28           While Mr. Ratliff's position is not without any basis, the Court rejects it.  First, Mr. Ratliff

10

is focusing on the bad acts committed by the defendant but case law is clear that "[t]he harm suffered [by the plaintiff] is the significant factor in defining a primary right." *Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Surety Co. of Am.*, 133 Cal. App. 4th 1319, 1327 (2005) (internal quotation marks omitted). Second, Mr. Ratliff seems to be equating bad acts committed by the defendant with the "legal wrong" but it is not clear that the two are the same. For example, the legal wrong here could be defined broadly as Defendants' act of foreclosing without authority, and not the specific facts as to why Defendants lacked the authority to foreclose. Notably, courts have stated that, "[i]f two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or *adds new facts supporting recovery*." *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174-75 (1983) (emphasis added). Moreover, new facts cannot always be a way to get around res judicata because that runs up against case law holding that res judicata includes not only issues "actually raised by proper pleadings and treated as an issue in the cause," but also matters that "*could* have been raised, [even though] not expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions." *Warga v. Cooper*, 44 Cal. App. 4th 371, 377-78 (1996) (emphasis in original; internal quotation marks omitted). *See, e.g., Matute v. JPMorgan Chase & Co.*, No. CV 16-01753 SJO (GJSx), 2016 U.S. Dist. LEXIS 70810, at *17-18 (C.D. Cal. May 31, 2016) (stating that "plaintiffs seeking to set aside a foreclosure may not relitigate their claims in subsequent actions, even when the second lawsuit asserts different causes of action or challenges different aspects of the loan or foreclosure process") (internal quotation marks omitted); *see also Gillies v. JPMorgan Chase Bank, N.A.*, 7 Cal. App. 5th 907, 914 (2017) (stating that "[i]t matters not that appellant has a new theory of wrongful foreclosure[;] [i]t is the same primary right which appellant has always claimed").

To the extent Mr. Ratliff makes the argument that res judicata is not applicable even if the same primary right is involved because he has now learned of new facts to support his claims, that argument lacks merit. In support of his position, Mr. Ratliff cites *Allied Fire Protection v. Diede*

11

*Construction, Inc.*, 127 Cal. App. 4th 150, 156 (2005), where the court held that (1) res judicata is

not a bar to claims that arise after an initial complaint is filed and (2) if a plaintiff did not know or

should not have known of the claim when the first action was filed, res judicata is not a bar to the

second action. *See id.* at 155. But the problem for Mr. Ratliff is that, as discussed above, his

invocation of the delayed discovery rule and/or equitable tolling is entirely conclusory. In other

words, Mr. Ratliff has failed to show that he should not have known of the wrongful foreclosure

based on a lack of an ownership interest at the time he filed the state lawsuits.

   The only place where Mr. Ratliff may have room to get around res judicata is with respect

to new events that took place after the state lawsuits were resolved – in particular, Chase's

apparent assertion of an ownership interest in February 2017 during the bankruptcy proceedings.

But, as discussed below, there is an independent ground to dismiss the quiet title and related

claims against Chase.

E.    Failure to State a Claim for Relief

   For the foregoing reasons, the statute of limitations and res judicata bar the majority of Mr.

Ratliff's claims against Defendants. However, even if those defenses were not applicable, Mr.

Ratliff still would fare no better because he has failed to state a viable claim for relief against

Defendants.

   1.    Wrongful Foreclosure, Quiet Title, and Violation of § 17200

   The Court has grouped the claims for wrongful foreclosure, quiet title, and violation of §

17200 together because, based on Mr. Ratliff's opposition, the basic predicate for all three claims

is the same – *i.e.*, once Mr. Ratliff's loan was transferred to the securitized trust, then MERS had

no authority to initiate foreclosure proceedings (which ultimately resulted in the sale of the real

property at issue to EMC, who then deeded the property to Homesales).

   The claims are not plausible (as required by *Iqbal* and *Twombly*) because they ignore the

following:

- The DOT contemplates MERS acting as nominee "for Lender *and* Lender's successors and

   assigns. MERS is the beneficiary under this Security Instrument." Compl., Ex. B (DOT at

   2) (emphasis added). Therefore, even if the loan was transferred to the securitized trust,

the DOT by its terms still allowed MERS to act on behalf of the owners of the securitized trust and/or the trustee for the securitized trust.  MERS was not, as Mr. Ratliff claims, a "stranger[] to [the] DOT [after] the 2003 [transfer] of [the] loan" to the Impac Trust.  Opp'n at 4.[3]

- Even if Mr. Ratliff's loan were put into the securitized trust[4] because (as stated in the forensic report) there is an allonge on the loan reflecting a transfer of the loan from Mortgage Store to Impac Funding Corporation, the forensic report also makes reference to a second allonge indicating that Impac Funding Corporation then transferred the loan to EMC.  Ultimately, EMC was the purchaser of the real property at the trustee's sale in October 2007, and several years later EMC transferred the property to Homesales. Therefore, if anything, the forensic report supports the proposition that EMC properly obtained ownership to the real property at issue.  At the hearing, Mr. Ratliff protested that the forensic report also showed a crossed-out allonge involving Deutsche Bank.  But that crossed-out allonge indicates that Deutsche Bank (as Trustee for the Impac Trust) was conveying the loan to Impac Funding Corporation.  It makes sense that that allonge was crossed out because Mortgage Store as the original lender needed to be the entity to transfer the loan to the Impac Trust.  It does not negate conveyance of title to Impac.

The bottom line is that Mr. Ratliff has not shown that there is a problem with the chain of ownership.

Admittedly, Chase is in a little bit of a different position from the other moving defendants (MERS, EMC, and Homesales).  Based on the allegations in the complaint, Chase does not appear to have had specific role with respect to the foreclosure.  Rather, Mr. Ratliff seems to have sued

[3] At the hearing, Mr. Ratliff raised a new argument not previously asserted in his complaint or opposition brief – *i.e.*, that MERS has a manual which provides that MERS will not act on a third party's behalf unless that third party is a member of MERS.  This argument has been waived by not being raised earlier.  Moreover, on the merits, the argument is not persuasive.  First, there is nothing to indicate that the relevant defendants are not MERS members.  Second, even if they were not, the DOT specifically provides that MERS has the authority to act for the lender's successors and assigns.  MERS apparently relied on that contractual delegation to act, regardless of what a manual may or may not have said.

[4] Defendants point out that the forensic report simply says that *may* have been the case.

13

1   Chase for suggesting, in February 2017, that it has some kind of ownership interest in the loan.  (It

2   is not clear that Chase was actually asserting an ownership interest per se.  Chase may well have

3   been just a loan servicer for the loan as indicated by the forensic commissioned by Mr. Ratliff.

4   *See* Compl, Ex. G (Forensic Report at 2, 13, 22) (stating that Chase was the loan servicer).  At the

5   hearing, Defendants indicated that Chase eventually acquired EMC.)

6          Nevertheless, any quiet title or related claim against Chase still fails.  Even if Chase asserts

7   some kind of ownership interest, Mr. Ratliff has failed to show that there is a problem with the

8   chain of ownership *vis-à-vis him*.  In other words, while there may now (post-foreclosure) be a

9   battle between Chase and Homesales as to who owns the real property, Mr. Ratliff has no basis for

10  asserting that he has an ownership interest because, as noted above, there does not appear to be

11  any problem with the chain of ownership from him to EMC and then Homesales.  In short, Mr.

12  Ratliff does not have standing to assert a quiet title or related claim in the first place.

13          2.      Violation of FDCPA

14          The FDCPA claim has been asserted against Chase, EMC, and several nonmoving

15  defendants.  According to Mr. Ratliff, these defendants violated the following provision of the

16  FDCPA:

17              A debt collector may not use unfair or unconscionable means to
                collect or attempt to collect any debt.  Without limiting the general
18              application of the foregoing, the following conduct is a violation of
                this section:
19
                . . . .
20
                (6)     Taking or threatening to take any nonjudicial action to effect
21                      dispossession or disablement of property if –

22                      (A)     there is no present right to possession of the property
                                claimed as collateral through an enforceable security
23                              interest;

24                      (B)     there is no present intention to take possession of the
                                property; or
25
                        (C)     the property is exempt by law from such
26                              dispossession or disablement.

27  15 U.S.C. § 1692f(6).

28          As to EMC, Mr. Ratliff has failed to state a claim for relief because there are no allegations

**United States District Court**
For the Northern District of California

14

**United States District Court**
For the Northern District of California

1    to suggest that EMC collected or tried to collect any debt from Mr. Ratliff.  EMC purchased the

2    real property at issue through the trustee's sale and thus has not sought any payment from Mr.

3    Ratliff at all.

4         As for Chase, its letter in response to Mr. Ratliff's bankruptcy filing does not indicate that

5    Chase was threatening to take nonjudicial action to effect dispossession or disablement of the real

6    property at issue.[5]  Moreover, if Chase was in fact the alleged owner of the debt (and not just a

7    loan servicer), then it could not be a debt collector for purposes of the FDCPA.  *See* 15 U.S.C. §

8    1692a(6) (defining "debt collector" as one "who regularly collects or attempts to collect . . . debts

9    owed or due or asserted to be owed or due *another*") (emphasis added); *Suellen v. Mercantile*

10   *Adjustment Bureau, LLC*, No. 12-cv-00916 NC, 2012 U.S. Dist. LEXIS 98640, at *6 (N.D. Cal.

11   June 12, 2012) (stating that "[t]he FDCPA only applies to debt collectors, not creditors"; adding

12   that "[t]he reason for this limited application of the FDPCA is to protect consumers against entities

13   that have 'no ongoing relationship with the [consumer]' and 'no incentive to engender [goodwill]

14   by treating the [consumer] with honesty and respect'").  Therefore, Mr. Ratliff has failed to state a

15   claim for relief with respect to Chase as well.

16        3.    Violation of FCRA

17        The FCRA claim has been asserted against Chase, EMC, and several nonmoving

18   defendants.  In his complaint, Mr. Ratliff alleges a violation of the FCRA because, *e.g.*, these

19   defendants "willfully and negligently furnish[ed] to credit reporting agencies information about

20   [him] which Defendants knew, or should have known, was incomplete and inaccurate."  Compl. ¶

21   135(a).

22        As to EMC, Mr. Ratliff has failed to state a claim for relief because there are no allegations

23   to suggest that it ever engaged with a credit reporting agency with respect to Mr. Ratliff.  As noted

24   above, EMC simply purchased the real property at issue through the trustee's sale.

25

26   _____

27   [5] Note that Chase appears to have sent the letter because Mr. Ratliff identified Chase in his
     bankruptcy filing. *See, e.g.*, *In re Ratliff*, No. 17-40264 (N.D. Cal. Bankr. Ct.) (Docket No. 12, at
     15) (summary of assets and liabilities) (stating that Homesales had a secured claim on the real

28   property at issue in the amount of approximately $738,000 and that Chase had a secured claim on
     the same real property in the same amount).

1   　　　As for Chase, the situation is no better.  Mr. Ratliff does not identify in his complaint any

2   furnishing of information to a credit reporting agency by Chase.  At best, there is the following

3   reference in the letter that Chase sent to Mr. Ratliff in February 2017 (in response to his

4   bankruptcy filing):

5   　　　　　We don't report full contractual information to the credit reporting
　　　　　agencies on bankruptcy accounts.  On accounts included in Chapter
6   　　　　　7 bankruptcy and if the debt isn't reaffirmed, we'll stop reporting on
　　　　　the discharged debt after the bankruptcy case is closed regardless of
7   　　　　　whether the loan is current or is brought current at a later date.

8   Compl., Ex. W (letter).

9   　　　　　　　　　**III.   <u>CONCLUSION</u>**

10   　　　For the foregoing reasons, the Court dismisses the claims asserted against the moving

11   defendants Chase, EMC, Homesales, and MERS.  The dismissal is with prejudice as Mr. Ratliff

12   has failed to make any showing that he could amend to cure any deficiencies, particularly with

13   regard to the statute of limitations and res judicata defenses.

14   　　　This order disposes of Docket No. 20.

15

16   　　　**IT IS SO ORDERED**.

17

18   Dated: July 6, 2017

19   _____

20   EDWARD M. CHEN
　　　United States District Judge

21

22

23

24

25

26

27

28