UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE RATLIFF,<br><br>        Plaintiff,<br><br>    v.<br><br>JP MORGAN CHASE BANK N.A., et al.,<br><br>        Defendants. | Case No. 17-cv-02155-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 20 |

Plaintiff Lonnie Ratliff[1] has filed against multiple defendants, asserting claims for, *inter alia*, wrongful foreclosure, quiet title, violation of the Fair Debt Collection Practices Act ("FDCPA"), violation of the Fair Credit Reporting Act ("FCRA"), and violation of the California Business & Professions Code § 17200. Currently pending before the Court is a motion to dismiss filed by four of the named defendants – *i.e.*, JPMorgan Chase Bank, N.A. ("Chase"); Homesales, Inc.; EMC Mortgage, LLC ("EMC"); and Mortgage Electronic Registration Systems, Inc. ("MERS").[2] Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to dismiss.

### I. FACTUAL & PROCEDURAL BACKGROUND

In his complaint, Mr. Ratliff alleges as follows.

---

[1] Previously, Mr. Ratliff represented himself in these proceedings. Currently, he is represented by counsel.

[2] The remaining defendants named in the complaint are: Mortgage Store Financial, Inc. ("Mortgage Store"); Impac Mortgage Holdings Inc. ("Impac"); Deutsche Bank National Trust Company ("Deutsche Bank"), as Trustee for Securitized Trust IMPAC CMB 2003-12 Trust ("Impac Trust"); Executive Trustee Services LLC ("ETS"); and First American Title Insurance Co. ("First American"). None of these defendants have made an appearance in the case as of yet. It is not clear that any of these defendants has been served.

Mr. Ratliff's lawsuit concerns certain real property that he owned in Oakland, California. The real property has both a front unit and a back unit. *See* Compl. ¶ 2.

In October 2003, Mr. Ratliff obtained a $630,000 loan from Mortgage Store. *See* Compl. ¶ 39. Chase appears to have been servicer for the $630,000 loan. *See* Compl., Ex. G (Forensic Rept. at 2).

The loan was secured by a deed of trust ("DOT") on the Oakland property. *See* Compl. ¶ 39 & Ex. B (DOT at 2). The trustee named on the DOT was First American. *See* Compl., Ex. B (DOT at 2). In addition, MERS was identified on the DOT as "a separate corporation that is acting solely as a nominee for Lender *and* Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." Compl., Ex. B (DOT at 2) (emphasis added).

At some point, Mortgage Store transferred the loan/DOT to the Impac Trust but the transfer, according to Plaintiff, was not properly effected. *See, e.g.*, Compl. ¶ 28 (alleging that "there was no 'True Sale' of Plaintiff's Tangible Note, a circumstance whereby the MORTGAGE STORE sold Plaintiff's Tangible Note to the 'buyer/seller' IMPAC Mortgage Holdings, Inc. in an ordinary course of business") (emphasis omitted); Compl. ¶ 29 (alleging that "The MORTGAGE STORE, INC. never negotiated the Tangible Note by operation of law for full value in accordance with all applicable law to IMPAC MORTGAGE HOLDINGS, INC."). The closing date for transfer of loans to the Impac Trust was supposed to be in December 2003. *See* Compl. ¶ 33.

Although Mr. Ratliff takes the position, in his complaint, that there was no proper transfer to the securitized trust, he also argues, at least in his opposition brief, that, because of the transfer to the securitized trust, "only the Trust Pool[,] or Deutsche Bank as its trustee, had the right to foreclose as they were the beneficiaries of Plaintiffs' [sic] mortgage at that point," Opp'n at 12, and not MERS. *See* Opp'n at 3 (arguing that "MERS listed itself as the beneficiary despite the fact that, at this point, the Impac . . . Trust . . . was the true beneficiary of Plaintiff's mortgage and MERS was a stranger to Plaintiff's DOT").

On July 21, 2005 – *i.e.*, several years after the closing date for transfer of loans to the Impac Trust – MERS signed a substitution of trustee in which it designated ETS as the new trustee in place of First American. *See* Defs.' RJN, Ex. A (substitution of trustee).

On the same day, ETS – acting at MERS's behest – issued a notice of default on the real property at issue. *See* Compl., Ex. I (notice of default). This notice of default was subsequently rescinded in August 2005. *See* Compl., Ex. J (rescission).

On February 6, 2006, another notice of default was issued. As above, the notice indicated that ETS was taking action on behalf of MERS. *See* Compl., Ex. K (notice of default).

Several months later, in May 2006, ETS had a notice of trustee's sale recorded against the real property. *See* Compl., Ex. L (notice of trustee's sale). For an unknown reason, that sale did not take place and another notice of trustee's sale issued in August 2007. *See* Compl., Ex. M (notice of trustee's sale).

Ultimately, the real property was sold in October 2007. The trustee's deed upon sale reflects that the ETS, as trustee, conveyed the property to EMC. *See* Compl., Ex. N (trustee's deed upon sale).

Many years later, in October 2013, a grant deed was recorded transferring the real property from EMC to Homesales. *See* Compl., Ex. O (grant deed).

In November 2013, Homesales filed an unlawful detainer action against Mr. Ratliff in state court with respect to the front unit of the real property. In February 2014, Homesales initiated a second unlawful detainer action, this time with respect to the back unit. *See* Compl. ¶¶ 50, 55.

In March 2017, a judgment was entered in favor of Homesales on the front unit. *See* Compl. ¶ 52. The status of the back unit has not yet been resolved. *See* Compl. ¶ 55.

In January 2017 – prior to the final judgment on the front unit – Mr. Ratliff filed a Chapter 7 petition in bankruptcy court. *See* Compl. ¶ 56. Mr. Ratliff identified Chase in one of his bankruptcy filings as a creditor (even though, as indicated above, Chase appears to have been only the servicer of the loan at issue). *See In re Ratliff*, No. 17-40264 (N.D. Cal. Bankr. Ct.) (Docket No. 12, at 15) (summary of assets and liabilities) (stating that Homesales had a secured claim on the real property at issue in the amount of approximately $738,000 and that Chase had a secured claim on the same real property in the same amount).

In what appears to be a response to the bankrupting filing, Chase sent a letter to Mr. Ratliff in February 2017. The letter states in relevant part as follows:

3

> **Here's how your recent bankruptcy filing affects your account**
>
> Account:                [REDACTED]
> Bankruptcy Case Number: 17-40264
> Property Address        2304 9th Ave
>                         Oakland CA 94606
>
> Dear Lonnie Ratliff Jr[.]:
>
> We recently received notification that you've filed for bankruptcy.
>
> **If you've filed Chapter 7 bankruptcy**, please call us at one of the numbers below to discuss plans for the property. We'd like to understand if you want to keep the property and if you're requesting to reaffirm the debt, meaning the debt will not be discharged and you'll still be responsible for the balance on your mortgage loan.
>
> Reaffirming a debt is a serious financial decision. You should determine if it's in your best interest and if you can afford to make the payments on the debt. . . .
>
> To request a reaffirmation agreement, you should call us at one of the numbers below. We don't consider your stated intention within your bankruptcy documents to be a request to enter into a reaffirmation agreement or a reaffirmation of the debt.
>
> We don't report full contractual information to the credit reporting agencies on bankruptcy accounts. On accounts included in Chapter 7 bankruptcy and if the debt isn't reaffirmed, we'll stop reporting on the discharged debt after the bankruptcy case is closed regardless of whether the loan is current or is brought current at a later date.
>
> **If you're interested in keeping the property** and your loan isn't current, homeowner assistance options may be available. Please call us at one of the numbers below to discuss your options. . . .
>
> If you surrender the property, the title won't automatically transfer and you'll still be responsible for any post-petition taxes, insurance and Homeowners Association dues until the title is transferred. . . .
>
> . . . .
>
> **If you don't want to receive monthly statements**
> We'll continue to send you monthly statements for informational purposes, but not as an attempt to impose personal liability for the debt. . . .
>
> **Payments on your account are voluntary**
> Any payment we receive is voluntary and won't be considered an assumption or reaffirmation of the debt. . . .

Compl., Ex. W (letter) (emphasis in original).

Mr. Ratliff was confused as a result of the Chase letter – *i.e.*, Chase was claiming that a

4

1 debt was still owed but Homesales claimed to be the owner of the real property at issue after a
2 foreclosure. *See* Compl. ¶ 58. Accordingly, Mr. Ratliff hired a person to do a "Forensic Chain of
3 Title Securitization Analysis." Compl. ¶ 58; *see also* Compl., Ex. G (forensic report).

4 The forensic report notes that Mr. Ratliff's loan with Mortgage Store "may have been sold,
5 transferred, assigned and securitized into" the Impac Trust. Compl., Ex. G (Forensic Report at
6 11); *see also* Compl., Ex. G (Forensic Report at 8) (stating that "[t]he Note may have been
7 securitized into IMPAC CMB Trust 2003-12"). This statement appears to be based on, *inter alia*,
8 an allonge on the loan reflecting a transfer of the loan from Mortgage Store to Impac Funding
9 Corporation. Mr. Ratliff ignores the fact that the forensic report also makes reference to a second
10 allonge indicating that Impac Funding Corporation at some point then transferred the loan to
11 EMC. As noted above, EMC was the purchaser of the real property at the trustee's sale in October
12 2007, and several years later EMC transferred the property to Homesales (thus confirming the
13 chain of ownership to Homesales).

14 The basic thrust of Mr. Ratliff's complaint is that Homesales has no right to the real
15 property at issue because the property was conveyed by companies who did not have an ownership
16 interest in the real property. Mr. Ratliff seems to want both damages based on the wrongful
17 foreclosure as well as a "return" of the property back to him (without any accompanying debt).
18 *See, e.g.*, Compl. ¶¶ 35-36.

19 The specific claims asserted by Mr. Ratliff in the complaint are as follows:

20 (1) Wrongful foreclosure (against Chase, EMC, Mortgage Store, Impac, Deutsche
21 Bank, MERS, ETS, and First American).

22 (2) Fraud in the concealment (Mortgage Store).

23 (3) Fraud in the inducement (Chase, EMC, Mortgage Store, Deutsche Bank, MERS,
24 ETS, and First American).

25 (4) Unconscionable contract (Mortgage Store).

26 (5) Breach of contract (Mortgage Store and MERS).

27 (6) Breach of fiduciary duty (Mortgage Store and MERS).

28 (7) Quiet title (Chase and Homesales).

5

| | | |
|---|---|---|
| | (8) | Violation of the FDCPA (Chase, Impac, ETS, EMC, and First American). |
| | (9) | Violation of the Rosenthal Fair Debt Collection Practices Act (Chase, Impac, ETS, EMC, and First American). |
| | (10) | Violation of the FCRA and the California Consumer Credit Reporting Agencies Act (Chase, Impac, ETS, EMC, and First American). |
| | (11) | Intentional interference with prospective economic advantage (all Defendants). |
| | (12) | Libel and slander (all Defendants). |
| | (13) | Violation of § 17200 (all Defendants). |
| | (14) | Injunctive relief (Homesales). |
| | (15) | Declaratory relief (all Defendants). |

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

B. Claims at Issue

As noted above, the moving defendants for purposes of the present motion are Chase,

1 EMC, Homesales, and MERS. The moving defendants – hereinafter, collectively, "Defendants"
2 for ease of reference – have moved for dismissal of all claims asserted against them. Defendants
3 argue that the claims are untimely and that res judicata is a bar to the claims as well. Defendants
4 also make some arguments that are specific as to each claim.

In his opposition, Mr. Ratliff does respond to the statute-of-limitations and res judicata defenses. However, notably, he does not otherwise offer arguments as to each of the claims asserted against Defendants. Rather, he makes arguments with respect to only the following claims: wrongful foreclosure, quiet title, violation of § 17200, violation of the FDCPA, and violation of the FCRA. Given this circumstance, the Court dismisses with prejudice the remaining claims asserted against Defendants, namely, fraud in the inducement, breach of contract, breach of fiduciary duty, violation of the state analogs to the FDCPA and FCRA, intentional interference with prospective economic advantage, libel and slander, declaratory relief, and injunctive relief.

The Court now turns to the issues of (1) statute of limitations, (2) res judicata, and (3) failure to state a claim for relief.

C. Statute of Limitations

While the statute of limitations is an affirmative defense and "complaints do not ordinarily need to allege the non-availability of affirmative defenses," case law is clear that "the statute of limitations may be raised in a motion to dismiss '[w]hen the running of the statute is apparent from the face of the complaint.'" *Baldain v. Am. Home Mortg. Serv'g, Inc.*, 2010 U.S. Dist. LEXIS 5671, at *13 (E.D. Cal. Jan. 5, 2010). Here, the running of the statute of limitations is clear from the face of the complaint. The trustee's sale took place years back in October 2007. Mr. Ratliff did not initiate this lawsuit until April 2017. Mr. Ratliff has failed to point to any cause of action that has a statute of limitations of more than nine years.

Implicitly recognizing such, Mr. Ratliff has invoked the delayed discovery rule and equitable tolling in his complaint. *See* Compl. ¶¶ 1, 48. But his invocation is entirely conclusory; he has made no concrete factual allegations to support either theory in his complaint. *See, e.g.*, Compl. ¶ 48 ("Using all resources available to him at that time, Plaintiff nevertheless could not have discovered, despite the use of due diligence, the true facts of the circuitous and illegal

1  journey taken by his Note and Deed of Trust between October 15, 2003 [the loan date] and
2  October 2, 2007, the date of the Trustee's Sale of his home."). Moreover, this Court's order
3  denying the request for a TRO specifically questioned "Mr. Ratliff's contention that he only
4  recently discovered new facts showing that illegal conduct took place . . . . . The forensic audit
5  report that he has attached to his complaint (Exhibit G) indicates that it was prepared based on a
6  publicly available online database." Docket No. 15 (Order at 2).

In his opposition, Mr. Ratliff tries to overcome this obstacle by arguing that "Defendants fundamentally err in their assertion that Plaintiff *could have* discovered these facts as such information was publicly available. In fact, the Bloomberg Professional Service database utilized by Plaintiff's securitization auditor to locate Plaintiff's loan, requires a subscription and is primarily used by financial professionals." Opp'n at 8 (emphasis in original). But this is a naked claim made by Mr. Ratliff without any supporting evidence. And in any event, even if the Bloomberg database may be accessed only through subscription, that does not thereby mean that Mr. Ratliff could not have tapped into that resource with some due diligence. Notably, Mr. Ratliff has not cited any supporting authority establishing that a subscription service is not fairly encompassed within due diligence, especially here when Mr. Ratliff was able to access the database in prosecuting this lawsuit. Moreover, nothing prevented Mr. Ratliff from hiring a forensic auditor earlier to conduct, *e.g.*, Bloomberg searches.

Admittedly, Mr. Ratliff does have one argument against a statute-of-limitations defense that may have some merit. That is, Mr. Ratliff argues that his quiet title and related claims against Chase could not have been raised earlier because it was not until February 2017 that Chase suggested it had an ownership interest in the loan still (*i.e.*, years after the trustee's sale in October 2007). But even if there were no time bar to the quiet title and related claims against Chase, those claims against Chase still fail for an independent reason, as discussed below.

D. Res Judicata

In addition to a statute-of-limitations defense, Defendants assert a res judicata defense based on three prior lawsuits filed by Mr. Ratliff. In all three lawsuits, Mr. Ratliff essentially contended that there was a wrongful foreclosure. The three lawsuits are as follows:

- *Ratliff I*.  The named defendants included EMC and MERS.  Mr. Ratliff initiated the case in August 2008 and it was resolved in July 2009.  *See* Defs.' RJN, Exs. B-C (complaint and amended complaint to, *inter alia*, set aside foreclosure sale); Defs.' RJN, Ex. D (order sustaining demurrer) (taking note of "allegation that there was irregularity in the foreclosure sale that resulted in EMC obtaining title to the property"; stating that "[t]he facts do not show that Plaintiff has any enforceable right to reacquire the property" and that, "[b]ased on the facts alleged, Plaintiff cannot establish the element of causation, which is fatal to all of his claims based on loss of the property").
- *Ratliff II*.  The named defendants were EMC and MERS.  Mr. Ratliff initiated the case in April 2010 and it was resolved (on appeal) in December 2013.  *See* Defs.' RJN, Ex. E (complaint for, *inter alia*, wrongful foreclosure); Defs.'s RJN, Ex. F (order sustaining demurrer); *Ratliff v. Mortg.*, No. A132886, 2013 Cal. App. Unpub. LEXIS 8797 (Cal. Ct. App. Dec. 5, 2013) (concluding res judicata is a bar to the action against EMC).
- *Ratliff III*.  The named defendants were EMC and Homesales.  Mr. Ratliff initiated the case in June 2014 and it was resolved in November 2014.  *See* Defs.' RJN, Ex. H (complaint for, *inter alia*, violation of § 17200 and quiet title); Defs.' RJN, Ex. I (order sustaining demurrer) (taking note of concession that the issue of wrongful foreclosure was not being relitigated; stating that "Plaintiffs concede that Lonnie lost title to the properties in 2007 [and] Plaintiffs have not alleged how they lost money or property as a result of the alleged robo-signing of the Grant Deed in 2013").

The parties agree that, because the prior judgments were issued by state courts, state law on res judicata applies.  *See also Dunn v. Noe*, No. C-07-3559 JCS, 2007 U.S. Dist. LEXIS 86521, at *20-21 (N.D. Cal. Nov. 7, 2007) (stating that, "[w]here a prior action is a state court action, federal courts must give 'full faith and credit' to the judgment of the state court under 28 U.S.C. § 1738" and "[s]ection 1738 commands a federal court to accept the claim preclusion rules chosen by the state in which the judgment is taken").  "In California, res judicata precludes a plaintiff from litigating a claim if: [1] the claim relates to the same 'primary right' as a claim in a prior action, [2] the prior judgment was final and on the merits, and [3] the plaintiff was a party or in

1  privity with a party in the prior action." *Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366
2  (9th Cir. 1985); *see also City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 762
3  (9th Cir. 2003).

Mr. Ratliff does not make any argument regarding the second and third elements of res judicata. Thus, the only dispute between the parties is whether the first element regarding "primary right" has been satisfied.

According to Defendants, the primary right should be defined broadly as Mr. Ratliff's right to be free from a wrongful foreclosure; clearly, both this case and the prior state court actions implicated Mr. Ratliff's right to be free from a wrongful foreclosure. In contrast, Mr. Ratliff argues that the primary right should be defined narrowly; more specifically, here, the primary right is his right to be free from a wrongful foreclosure *based on Defendants' lack of an ownership interest* but, in the prior state court actions, the primary right was the right to be free from a wrongful foreclosure *based on a different factual predicate – e.g.*, "(1) an auctioneer's misrepresentations to [him] that [the] property would be sold back to [him]; (2) the fact that the purchaser of [the] property (Defendant EMC . . . ) at the foreclosure sale did not actually possess [the] promissory note; and (3) that the 2013 grant deed of [the] property [from EMC] to Defendant Homesales was robo-signed." Opp'n at 7.

In support of his position, Mr. Ratliff largely relies on *Branson v. Sun-Diamond Growers of Cal.*, 24 Cal. App. 4th 327 (1994). There, the state court discussed the primary rights theory and quoted commentary on that theory by Professor Pomeory: "'If two separate and distinct primary rights could be invaded by one and the same wrong, *or if the single primary right should be invaded by two distinct and separate legal wrongs*, in either case two causes of action would result.'" *Id.* at 342 (emphasis added). *Cf., e.g., Johnson v. City & Cty. of S.F.*, No. C-11-5081 EMC, 2013 U.S. Dist. LEXIS 53629, at *22 (N.D. Cal. Apr. 15, 2013) ("As this additional allegation concerns a different period of time, and a different wrong allegedly committed by Defendant in keeping Plaintiff from work, it would appear that it does not involve the same primary right as the claims raised in Plaintiff's state court suit.").

While Mr. Ratliff's position is not without any basis, the Court rejects it. First, Mr. Ratliff

is focusing on the bad acts committed by the defendant but case law is clear that "[t]he harm suffered [by the plaintiff] is the significant factor in defining a primary right." *Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Surety Co. of Am.*, 133 Cal. App. 4th 1319, 1327 (2005) (internal quotation marks omitted). Second, Mr. Ratliff seems to be equating bad acts committed by the defendant with the "legal wrong" but it is not clear that the two are the same. For example, the legal wrong here could be defined broadly as Defendants' act of foreclosing without authority, and not the specific facts as to why Defendants lacked the authority to foreclose. Notably, courts have stated that, "[i]f two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or *adds new facts supporting recovery*." *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174-75 (1983) (emphasis added). Moreover, new facts cannot always be a way to get around res judicata because that runs up against case law holding that res judicata includes not only issues "actually raised by proper pleadings and treated as an issue in the cause," but also matters that "*could* have been raised, [even though] not expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions." *Warga v. Cooper*, 44 Cal. App. 4th 371, 377-78 (1996) (emphasis in original; internal quotation marks omitted). *See, e.g.*, *Matute v. JPMorgan Chase & Co.*, No. CV 16-01753 SJO (GJSx), 2016 U.S. Dist. LEXIS 70810, at *17-18 (C.D. Cal. May 31, 2016) (stating that "plaintiffs seeking to set aside a foreclosure may not relitigate their claims in subsequent actions, even when the second lawsuit asserts different causes of action or challenges different aspects of the loan or foreclosure process") (internal quotation marks omitted); *see also Gillies v. JPMorgan Chase Bank, N.A.*, 7 Cal. App. 5th 907, 914 (2017) (stating that "[i]t matters not that appellant has a new theory of wrongful foreclosure[;] [i]t is the same primary right which appellant has always claimed").

To the extent Mr. Ratliff makes the argument that res judicata is not applicable even if the same primary right is involved because he has now learned of new facts to support his claims, that argument lacks merit. In support of his position, Mr. Ratliff cites *Allied Fire Protection v. Diede*

11

*Construction, Inc.*, 127 Cal. App. 4th 150, 156 (2005), where the court held that (1) res judicata is not a bar to claims that arise after an initial complaint is filed and (2) if a plaintiff did not know or should not have known of the claim when the first action was filed, res judicata is not a bar to the second action. *See id.* at 155. But the problem for Mr. Ratliff is that, as discussed above, his invocation of the delayed discovery rule and/or equitable tolling is entirely conclusory. In other words, Mr. Ratliff has failed to show that he should not have known of the wrongful foreclosure based on a lack of an ownership interest at the time he filed the state lawsuits.

The only place where Mr. Ratliff may have room to get around res judicata is with respect to new events that took place after the state lawsuits were resolved – in particular, Chase's apparent assertion of an ownership interest in February 2017 during the bankruptcy proceedings. But, as discussed below, there is an independent ground to dismiss the quiet title and related claims against Chase.

E.  Failure to State a Claim for Relief

For the foregoing reasons, the statute of limitations and res judicata bar the majority of Mr. Ratliff's claims against Defendants. However, even if those defenses were not applicable, Mr. Ratliff still would fare no better because he has failed to state a viable claim for relief against Defendants.

1.  Wrongful Foreclosure, Quiet Title, and Violation of § 17200

The Court has grouped the claims for wrongful foreclosure, quiet title, and violation of § 17200 together because, based on Mr. Ratliff's opposition, the basic predicate for all three claims is the same – *i.e.*, once Mr. Ratliff's loan was transferred to the securitized trust, then MERS had no authority to initiate foreclosure proceedings (which ultimately resulted in the sale of the real property at issue to EMC, who then deeded the property to Homesales).

The claims are not plausible (as required by *Iqbal* and *Twombly*) because they ignore the following:

- The DOT contemplates MERS acting as nominee "for Lender *and* Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." Compl., Ex. B (DOT at 2) (emphasis added). Therefore, even if the loan was transferred to the securitized trust,

United States District Court
For the Northern District of California

- the DOT by its terms still allowed MERS to act on behalf of the owners of the securitized trust and/or the trustee for the securitized trust. MERS was not, as Mr. Ratliff claims, a "stranger[] to [the] DOT [after] the 2003 [transfer] of [the] loan" to the Impac Trust. Opp'n at 4.[3]

- Even if Mr. Ratliff's loan were put into the securitized trust[4] because (as stated in the forensic report) there is an allonge on the loan reflecting a transfer of the loan from Mortgage Store to Impac Funding Corporation, the forensic report also makes reference to a second allonge indicating that Impac Funding Corporation then transferred the loan to EMC. Ultimately, EMC was the purchaser of the real property at the trustee's sale in October 2007, and several years later EMC transferred the property to Homesales. Therefore, if anything, the forensic report supports the proposition that EMC properly obtained ownership to the real property at issue. At the hearing, Mr. Ratliff protested that the forensic report also showed a crossed-out allonge involving Deutsche Bank. But that crossed-out allonge indicates that Deutsche Bank (as Trustee for the Impac Trust) was conveying the loan to Impac Funding Corporation. It makes sense that that allonge was crossed out because Mortgage Store as the original lender needed to be the entity to transfer the loan to the Impac Trust. It does not negate conveyance of title to Impac.

The bottom line is that Mr. Ratliff has not shown that there is a problem with the chain of ownership.

Admittedly, Chase is in a little bit of a different position from the other moving defendants (MERS, EMC, and Homesales). Based on the allegations in the complaint, Chase does not appear to have had specific role with respect to the foreclosure. Rather, Mr. Ratliff seems to have sued

---

[3] At the hearing, Mr. Ratliff raised a new argument not previously asserted in his complaint or opposition brief – *i.e.*, that MERS has a manual which provides that MERS will not act on a third party's behalf unless that third party is a member of MERS. This argument has been waived by not being raised earlier. Moreover, on the merits, the argument is not persuasive. First, there is nothing to indicate that the relevant defendants are not MERS members. Second, even if they were not, the DOT specifically provides that MERS has the authority to act for the lender's successors and assigns. MERS apparently relied on that contractual delegation to act, regardless of what a manual may or may not have said.

[4] Defendants point out that the forensic report simply says that *may* have been the case.

13

Chase for suggesting, in February 2017, that it has some kind of ownership interest in the loan. (It is not clear that Chase was actually asserting an ownership interest per se. Chase may well have been just a loan servicer for the loan as indicated by the forensic commissioned by Mr. Ratliff. *See* Compl, Ex. G (Forensic Report at 2, 13, 22) (stating that Chase was the loan servicer). At the hearing, Defendants indicated that Chase eventually acquired EMC.)

Nevertheless, any quiet title or related claim against Chase still fails. Even if Chase asserts some kind of ownership interest, Mr. Ratliff has failed to show that there is a problem with the chain of ownership *vis-à-vis him*. In other words, while there may now (post-foreclosure) be a battle between Chase and Homesales as to who owns the real property, Mr. Ratliff has no basis for asserting that he has an ownership interest because, as noted above, there does not appear to be any problem with the chain of ownership from him to EMC and then Homesales. In short, Mr. Ratliff does not have standing to assert a quiet title or related claim in the first place.

### 2. Violation of FDCPA

The FDCPA claim has been asserted against Chase, EMC, and several nonmoving defendants. According to Mr. Ratliff, these defendants violated the following provision of the FDCPA:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . . .
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –
>
>     (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
>     (B) there is no present intention to take possession of the property; or
>
>     (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

As to EMC, Mr. Ratliff has failed to state a claim for relief because there are no allegations

to suggest that EMC collected or tried to collect any debt from Mr. Ratliff. EMC purchased the real property at issue through the trustee's sale and thus has not sought any payment from Mr. Ratliff at all.

As for Chase, its letter in response to Mr. Ratliff's bankruptcy filing does not indicate that Chase was threatening to take nonjudicial action to effect dispossession or disablement of the real property at issue.[5] Moreover, if Chase was in fact the alleged owner of the debt (and not just a loan servicer), then it could not be a debt collector for purposes of the FDCPA. *See* 15 U.S.C. § 1692a(6) (defining "debt collector" as one "who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due *another*") (emphasis added); *Suellen v. Mercantile Adjustment Bureau, LLC*, No. 12-cv-00916 NC, 2012 U.S. Dist. LEXIS 98640, at *6 (N.D. Cal. June 12, 2012) (stating that "[t]he FDCPA only applies to debt collectors, not creditors"; adding that "[t]he reason for this limited application of the FDPCA is to protect consumers against entities that have 'no ongoing relationship with the [consumer]' and 'no incentive to engender [goodwill] by treating the [consumer] with honesty and respect'"). Therefore, Mr. Ratliff has failed to state a claim for relief with respect to Chase as well.

3. Violation of FCRA

The FCRA claim has been asserted against Chase, EMC, and several nonmoving defendants. In his complaint, Mr. Ratliff alleges a violation of the FCRA because, *e.g.*, these defendants "willfully and negligently furnish[ed] to credit reporting agencies information about [him] which Defendants knew, or should have known, was incomplete and inaccurate." Compl. ¶ 135(a).

As to EMC, Mr. Ratliff has failed to state a claim for relief because there are no allegations to suggest that it ever engaged with a credit reporting agency with respect to Mr. Ratliff. As noted above, EMC simply purchased the real property at issue through the trustee's sale.

---

[5] Note that Chase appears to have sent the letter because Mr. Ratliff identified Chase in his bankruptcy filing. *See, e.g.*, *In re Ratliff*, No. 17-40264 (N.D. Cal. Bankr. Ct.) (Docket No. 12, at 15) (summary of assets and liabilities) (stating that Homesales had a secured claim on the real property at issue in the amount of approximately $738,000 and that Chase had a secured claim on the same real property in the same amount).

15

As for Chase, the situation is no better. Mr. Ratliff does not identify in his complaint any furnishing of information to a credit reporting agency by Chase. At best, there is the following reference in the letter that Chase sent to Mr. Ratliff in February 2017 (in response to his bankruptcy filing):

> We don't report full contractual information to the credit reporting agencies on bankruptcy accounts. On accounts included in Chapter 7 bankruptcy and if the debt isn't reaffirmed, we'll stop reporting on the discharged debt after the bankruptcy case is closed regardless of whether the loan is current or is brought current at a later date.

Compl., Ex. W (letter).

## III. CONCLUSION

For the foregoing reasons, the Court dismisses the claims asserted against the moving defendants Chase, EMC, Homesales, and MERS. The dismissal is with prejudice as Mr. Ratliff has failed to make any showing that he could amend to cure any deficiencies, particularly with regard to the statute of limitations and res judicata defenses.

This order disposes of Docket No. 20.

**IT IS SO ORDERED**.

Dated: July 6, 2017

_____
EDWARD M. CHEN
United States District Judge