Renee Choy Ohlendorf (SBN 263939)
rchoy@hinshawlaw.com
Tyler A. Carle (SBN 298033)
tcarle@hinshawlaw.com
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, CA 94111
Telephone:    415-362-6000
Facsimile:    415-834-9070

IMPAC MORTGAGE HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| LONNIE RATLIFF, JR., an individual, | Case No. 3:17-cv-02155-EMC |
| Plaintiff, | **DEFENDANT IMPAC MORTGAGE HOLDINGS, INC. REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULES 12(B)(1) AND 12(B)(6)** |
| vs. | |
| JP MORGAN CHASE BANK, N.A., a National Banking Association aka CHASE; EMC MORTGAGE, LLC f/k/a EMC MORTGAGE CORPORATION; HOMESALES, INC., a Delaware corporation; THE MORTGAGE STORE FINANCIAL, INC., a California corporation; IMPAC MORTGAGE HOLDINGS, INC., a Maryland corporation; DEUTSCHE BANK NATIONAL TRUST COMPANY aka DEUTSCHE BANK TRUST AS TRUSTEE FOR SECURITIZED TRUST IMPAC CMB 2003-12 TRUST; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a Delaware corporation; EXECUTIVE TRUSTEE SERVICES, LLC., a limited liability company; FIRST AMERICAN TITLE INSURANCE CO. and DOES 1 through 100, inclusive, | Date:     October 12, 2017<br>Time:     1:30 p.m.<br>Place:    Courtroom 5, 17th Floor<br>          450 Golden Gate Ave.<br>          San Francisco, CA 94102<br><br>Complaint Filed:  April 18, 2017 |
| Defendants. | |

For its reply in support of its Motion to Dismiss Plaintiff's Complaint Pursuant to Rules 12(b)(1) and 12(b)(6), Defendant Impac Mortgage Holdings, Inc. ("Impac") states as follows:

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff asks this Court to ignore its own previous rulings and well-established law, and to infer the facts not pled to save his Complaint from dismissal. The crux of his lawsuit is that the 2007 foreclosure of his property was improper. However, those claims were already litigated in multiple proceedings in California's trial and appellate courts. The case law is clear that Plaintiff may not seek federal review of those judgments through this action, which is nothing more than a *de facto* appeal prohibited by the *Rooker-Feldman* doctrine.

Moreover, Plaintiff has failed to allege any actionable conduct by Impac. The sole factual allegation against Impac, that it purchased Plaintiff's loan from the original lender, is not actionable under any legal theory. Nor may Plaintiff attempt to bootstrap from the claims asserted against other defendants, as he has likewise failed to allege any agency relationship that would support derivative liability. And as this Court has already determined, Plaintiff's claims are stale and barred by the statute of limitations. As such, dismissal with prejudice is appropriate.

## II. ARGUMENT

### A. The *Rooker-Feldman* and *Younger* Abstention Doctrines Preclude the Exercise of Subject Matter Jurisdiction Over Plaintiff's Claims Against Impac, as the Claims Herein Are Inextricably Intertwined with the Underlying State Court Judgments.

The *Rooker-Feldman* doctrine "'bars a district court from exercising jurisdiction not only over an action styled as a direct appeal' and also 'the de facto equivalent of such an appeal.'" *Thompson v. Santa Cruz County Human Resources Svcs. Dept.*, Case No. 12-CV-03894-LHK, 2013 WL 1750960 at *4, (N.D. Cal. 2013) (citations omitted). The doctrine applies where a plaintiff is "(1) assert[ing] as her injury legal error or errors by the state court and (2) seek[ing] as her remedy relief from the state court judgment." *Id*. (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). As one California federal court explained, if those two conditions are met, *Rooker-Feldman*

> will not only prohibit the Plaintiff from litigating the de facto appeal, but also any issue that is 'inextricably intertwined' with the state court's judgment. The "inextricably intertwined" test is *only* applied if the Court has already determined that

> *Rooker-Feldman* applies because the plaintiff is seeking a prohibited de facto appeal. A claim is "inextricably intertwined" with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it," *i.e.* "[w]here federal relief can only be predicated upon a conviction that the state court was wrong." *Id*. (citations omitted, emphasis original).

It is clear that this lawsuit is an improper, *de facto* appeal of the state court judgments, which is prohibited by *Rooker-Feldman*. The Alameda Superior Court and the California Court of Appeal already twice decided that there was no merit to Plaintiff's wrongful foreclosure claims, however. *See* RJN ¶¶7, 10, and Exhs. G, J thereto; *Ratliff v. EMC Mtg. Corp., et al.*, 2013 WL 6330653, at *1 (2013); *Ratliff v. EMC Mtg. Corp., et al.*, 2017 WL 6330653, at *6 (March 22, 2017). The Alameda Superior Court also entered judgment against Plaintiff in the subsequent unlawful detainer action against him entitled *Homesales, Inc. v. Ratliff, et al.*, Case No. RG13701842. *See* Exh. R to Compl.

Though Plaintiff contends in his Opposition that he is not seeking to reverse the state court judgments against him, his contention is belied by his prayer for relief. <u>Tellingly, Plaintiff requests a declaration that Defendants lack the right to foreclose upon or evict him from his property, and quiet title – the exact opposite of the rulings and judgments the state courts issued</u>. *See* Compl., pp. 48-49. Though not styled as a direct appeal of the state court judgments, <u>Plaintiff does not dispute that he seeks from this Court the relief that was denied to him by the judges in Alameda Superior and California Courts of Appeal</u>. Nor is there any merit to Plaintiff's suggestion that *Rooker-Feldman* does not apply because no "actual judgment" was entered in the state court foreclosure actions. *See* Opp.Br. 6:10-19. The state court records confirm that such an assertion is <u>false</u>. *See* RJN ¶¶7, 10, and Exhs. G, J thereto; *Ratliff v. EMC Mtg. Corp., et al.*, 2013 WL 6330653, at *1 (2013); *Ratliff v. EMC Mtg. Corp., et al.*, 2017 WL 6330653, at *6 (March 22, 2017).

Plaintiff also urges this Court to apply claim preclusion principles in lieu of *Rooker-Feldman*. Even if this Court is inclined to do so, Plaintiff would fare no better under this analysis. Regardless of the legal theory that Plaintiff advocates, the ultimate issue and purported injury to which Plaintiff seeks redress is whether the 2007 foreclosure was wrongful. As discussed above and in the moving papers, that has already been extensively litigated. There is no merit to Plaintiff's assertion that his present lawsuit arises out of his recent discovery of a "new nucleus of facts" based on Chase's

February 2, 2017 letter, namely, that the transfer of his loan to a securitized trust was improper. The Chase letter makes no reference to Impac, and Plaintiff does not allege a single allegation of any actionable conduct by Impac in 2017, or at any other time.  The sole allegation against Impac is that it purchased Plaintiff's loan from The Mortgage Store, the validity of which Plaintiff does not contest.

Further, this Court has already considered and rejected the very arguments that Plaintiff raises in its Opposition.  In adjudicating other defendants' motion to dismiss the instant complaint, this Court correctly concluded that res judicata operates to bar Plaintiff's claims, precisely because the claims herein are based on Plaintiff's three prior wrongful foreclosure lawsuits. [Dkt. 25].  The Court also correctly rejected Plaintiff's delayed discovery argument as "conclusory".  Accordingly, law of the case doctrine applies here, and binds this Court to its prior ruling on the issue of res judicata. *Ingle v. Circuit City*, 408 F.3d 592 (9th Cir. 2005); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, Case No. 11-cv-9495, 2013 U.S. Dist. LEXIS 72683 (C.D. Cal. May 9, 2013).

Plaintiff offers no rebuttal of Impac's arguments regarding application of the *Younger* abstention doctrine, and thus, tacitly concedes the merits of same.  Because Plaintiff's claims are inextricably intertwined with those adjudicated in state court, *Rooker-Feldman* and *Younger* preclude this Court's review.

**B.     Plaintiff Does Not, and Cannot State a Claim for Wrongful Foreclosure.**

This Court previously concluded that the statute of limitations barred Plaintiff's claims, having rejected his theory of delayed discovery and equitable tolling as "conclusory", since Plaintiff could have discovered his "new facts" earlier. [Dkt. 5].  It should likewise find here under law of the case doctrine.

The recorded documents attached to and incorporated into Plaintiff's Complaint confirm that Impac had no involvement with the foreclosure on Plaintiff's property, which is fatal to his claim. To plead a wrongful foreclosure claim, Plaintiff must allege facts establishing **"**(1) defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the

amount of the secured indebtedness or were excused from tendering." *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062. Though not alleged in the Complaint, Plaintiff does not dispute that Impac sold Plaintiff's loan on July 27, 2007. *See* Opp. Br. 11:2-4. The applicable Notice of Trustee's Sale, was recorded by Executive Trustee Services ("ETS") on August 20, 2007, and reflects that the public auction took place on September 11, 2007. *See* Exh. M to Compl. The sale was effectuated on October 2, 2007, and the Trustee's Deed Upon Sale, also recorded by ETS, reflects that the Property was sold to co-defendant EMC Mortgage Corporation ("EMC"). *See* Exh. N to Compl. EMC subsequently conveyed the Property to Homesales on October 7, 2013. *See* Exh. O to Compl. In short, Impac had divested itself of Plaintiff's loan prior to the foreclosure sale even taking place. Nor does Plaintiff plead the requisite elements of harm and tender, which he does not address in his Opposition.

Nor does Plaintiff have standing to challenge a defect in the securitization of the loan, which is a voidable loan transfer. *Yhudai v. Impac Funding Corp.*, 1 Cal.App.5th 1252, 1259 (2016); *Mendoza v. JP Morgan Chase Bank, N.A.*, 6 Cal.App.5th 802, 819 (2016) ("defects in the securitization of loans can be ratified by the beneficiaries of the trusts . . . and, as a result, the assignments are voidable."); *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal.App.4th 808, 815 (Cal.App. 2016); *Halajian v. Deutsche Bank National Trust Co.*, 2017 WL 1505319, *2 (9th Cir. 2017); *Morgan v. Aurora Loan Svcs.*, LLC, 646 Fed.Appx. 546, 550 (9th Cir. 2016); *Brewer v. Wells Fargo Bank, N.A.*, 2017 WL 1315579, *2-4 (N.D. Cal. 2017); *Rajamin v. Deutsche Bank National Trust Co.*, 757 F.3d 79 (2d Cir. 2014); *Rogers v. Bank of America, N.A.* (8th Cir. 2015); *Jepson v. Bank of New York Mellon*, 816 F.3d 942, 946 (7th Cir. 2016). As this Court previously ruled, "Mr. Ratliff has not shown that there is a problem with the chain of ownership." [Dkt. 25, at 13:18-19]. Thus, there was no wrongful foreclosure.

In an attempt to salvage this claim, it appears that Plaintiff attempts to argue that Impac is vicariously liable for the actions of MERS, First American, and Executive Trustee. Without supporting facts (because there are none), Plaintiff now claims that the foreclosing entities (MERS, First American, and Executive Trustee) acted as Impac's "agents", and that Impac "directed" them to conduct an improper foreclosure sale. *See* Opp.Br. 11:2-8. For there to be derivative

liability, however, an agency relationship must first exist, which Plaintiff does not, and cannot plead. An agency "is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 853 F.3d 1020, 1029 (9th Cir. 2017) (quoting Restatement (Third) of Agency §1.01 (Am. Law Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.'" *Id*. (quoting Restatement (Third) of Agency §1.01 cmt. c).

Critically, the Complaint is devoid of any factual allegations stating any relationship between Impac and another named defendant, or that Impac exercised the requisite control over the alleged agent's actions. The sole allegations in the Complaint about any relationship between Impac and any other party are found at Paragraphs 18 through 21, wherein Plaintiff conclusorily alleges <u>upon information and belief</u> that each defendant acted as the agent, servant, employee, joint venture of each other defendant. That is insufficient to establish <u>any</u> relationship between Impac and any other defendant, much less an agency relationship from which derivative liability could flow. Nor does it establish the requisite control. Plaintiff may not bootstrap from his claims of wrongful foreclosure against other defendants to assert a claim against Impac. As such, this claim fails as a matter of law.

**C.    Plaintiff Does Not, and Cannot State a Claim for Violation of the FDCPA.**

The Ninth Circuit has concluded that non-judicial foreclosure on a property under a deed of trust does not constitute collection of a debt subject to the FDCPA, because the purpose of a non-judicial foreclosure sale is to enforce a security interest, rather than to collect money from the borrower. *Ho v. ReconTrust Co., NA*, 840 F.3d 618, 621, 626, fn. 11 (9th Cir. 2016). Thus, activities such as sending notices of default and notices of sale that precede a non-judicial foreclosure, also do not constitute debt collection activity under the FDCPA. *Id*.; *see also Fonteno v. Wells Fargo Bank, N.A.*, 228 Cal. App.4th 1358, 1375-77 (2014).

Though Plaintiff suggests in his Opposition that "Defendants' actions in seeking to evict Plaintiff from his home have continued to the present" constitute collection activity subject to the

1  FDCPA, eviction proceedings are not an attempt to collect a "debt", because it is not an attempt to
2  collect money from a consumer. *See* Opp Br. 14:25-26. Rather, it is simply another mechanism to
3  reinforce a security interest in the foreclosure process. *See e.g. Ho*, 840 F.3d at 618, 621, 626, fn. 11.
4  Tellingly, Plaintiff cites to no case law in support of this proposition. Nevertheless, the Complaint
5  confirms that Impac had no involvement with any eviction or unlawful detainer proceedings, as
6  those actions were undertaken by Homesales, Inc. *See* Compl. ¶¶50-55 and Exhs. P-V thereto. In
7  short, Plaintiff does not identify a single communication with Impac, or any other action that could
8  be construed as collection activity other than the 2007 foreclosure. An FDCPA action based upon
9  that event is barred by the one-year statute of limitations. 15 U.S.C. §1692k(d).

10  Moreover, there is no vicarious liability under the FDCPA unless plaintiff can establish (1)
11  the requisite control over the purported collector (*see e.g. Cassady v. Union Adjustment Co., Inc.*,
12  2008 WL 4773976 (N.D. Cal. 2008) (granting summary judgment in favor of debt collector on
13  grounds that debt collector was not vicariously liable for attorney's actions pre-litigation demand
14  letter where collector did not exercise control over attorney's actions)), and (2) that the defendant is
15  also a debt collector as defined by Section 1692a(6) (*see e.g. Havens-Tobias v. Eagle*, 127 F.Supp.2d
16  889, 898 (S.D. Ohio 2001); *Conner v. Howe*, 344 F.Supp.2d 1164, 1170 (S.D. Ind. 2004); *Scally v.*
17  *Hilco Receivables, LLC*, 392 F.Supp.2d 1036, 1040-41 (N.D. Ill. 2005). Plaintiff has failed to plead
18  facts supporting either of these requirements to state a derivative claim for violation of the FDCPA.
19  This claim fails as a matter of law.

20          **D.**      **Plaintiff Does Not, and Cannot State a Claim for Violation of the FCRA.**
21
22  Though Plaintiff contends in a header that he has stated a claim for violation of the FCRA, he
23  offers no substantive argument in rebuttal. *See* Opp. Br. 14:16-26, 15:1-8. He does not address his
24  failure to identify any instance in which Impac provided any credit information about him to any
25  credit bureau, or when, much less respond to arguments that any claim for violation of Section
26  1681s-2(a) is pre-empted, that Impac did not have any duties under Section 1681s-2(b) triggered, or
27  that these claims are barred by the two-year statute of limitations. As this omission amounts to a
28  tacit concession of the merits of Impac's arguments, dismissal with prejudice is appropriate.

### E.     Plaintiff Does Not, and Cannot State a Claim for Violation of the UCL.

As Plaintiff's UCL claim is premised upon his claim for wrongful foreclosure, it fails for the same reasons.  Moreover, Plaintiff does not address his failure to allege ongoing wrongful business conduct or a pattern of wrongful business conduct by Impac, as is required to state a claim. *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1150 (citing *Bank of the West v. Sup. Ct.* (1992) 2 Cal.4th 1254, 1266); *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1155-1156.  The sole allegations of purported "unlawful business practices" are made against all defendants generally, and upon information and belief. *See* Compl. ¶¶-158.  Nor is there vicarious liability under the UCL. *Emery v. Visa Int'l Service Ass'n.* (2002) 95 Cal.App.4th 952, 960 (citing *People v. Toomey* (1984) 157 Cal.App.3d 1, 14).  Dismissal of this claim with prejudice is appropriate.

### F.     Plaintiff Tacitly Concedes that His Claims for Violation of the Rosenthal Act, Violation of the CCRAA, Intentional Interference with Prospective Economic Advantage, Libel, Slander, and Declaratory Relief Lack Merit.

It does not appear that Plaintiff has submitted any argument with respect to his claims for violation of the Rosenthal Act, violation of the CCRAA, intentional interference with prospective economic advantage, libel, slander, or declaratory relief.  Because Plaintiff's failure to do so is tantamount to a concession of the merits of Impac's arguments, Impac submits no reply on these issues to avoid further encumbering the record.

Additionally, Plaintiff states in his Opposition that he has stated facts sufficient to establish a quiet title claim against Impac, but the Complaint indicates that is directed only toward defendants JP Morgan Chase Bank, N.A., and Homesales, Inc., which have both been dismissed with prejudice.  To the extent that Plaintiff is attempting to assert new claims against Impac via his Opposition, that is improper.

### G.     Leave to Amend Should Be Denied.

Plaintiff cannot meet his burden of showing how amendment would cure the fatal pleading defects identified herein.  He has not alleged that Impac has engaged in any actionable activity within the applicable statutes of limitation.  Because amendment would be futile and a waste of

1 | limited judicial and litigation resources, further leave to amend should be denied.

## III.    CONCLUSION

For all the foregoing reasons, Defendant Impac Mortgage Holdings, Inc. respectfully requests that this Court grant its Motion to Dismiss in its entirety, without leave to amend.

Dated:  September 22, 2017                                       HINSHAW & CULBERTSON LLP

                                                                By: */s/ Renee Choy Ohlendorf*
                                                                    Renee Choy Ohlendorf
                                                                    Tyler A. Carle
                                                                    Attorneys for Defendant
                                                                    IMPAC MORTGAGE HOLDINGS, INC.