UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE RATLIFF,<br><br>    Plaintiff,<br><br>    v.<br><br>MORTGAGE STORE FINANCIAL, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-02155-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 39 |

In this foreclosure-related case, Plaintiff Lonnie Ratliff, Jr., has sued multiple defendants, asserting claims for, *inter alia*, wrongful foreclosure, quiet title, violation of the Fair Debt Collection Practices Act ("FDCPA"), violation of the Fair Credit Reporting Act ("FCRA"), and violation of the California Unfair Competition Law ("UCL"), Business & Professions Code § 17200. The Court previously dismissed these claims as to defendants JPMorgan Chase Bank, N.A. ("Chase"), Homesales, Inc. ("Homesales"), EMC Mortgage LLC ("EMC), and Mortgage Electronic Registration Systems, Inc. ("MERS"). *See* Docket No. 25. Now before the Court is defendant Impac Mortgage Holding, Inc.'s motion to dismiss. Having considered all submitted materials and arguments, the Court **DISMISSES** with prejudice all claims against Impac.

## I.    FACTUAL BACKGROUND

Mr. Ratliff has filed suit against:

- Impac Mortgage Holdings, Inc. ("Impac") (moving defendant);
- Chase (claims previously dismissed);
- EMC (claims previously dismissed);
- Homesales (claims previously dismissed);
- MERS (claims previously dismissed);

- The Mortgage Store Financial, Inc. ("Mortgage Store");
- Deutsche Bank National Trust Company ("Deutsche Bank"), as trustee for the Securitized Trust Impac CMB 2003-12 Trust ("Impac Trust");
- Executive Trustee Services, LLC ("ETS"); and
- First American Title Insurance Co. ("First American").

Mr. Ratliff's pro se complaint is unclear, but it appears to allege the following:

In October 2003, Mr. Ratliff obtained a $630,000 loan from Mortgage Store. The loan was secured with a deed of trust ("DOT") upon certain real property he owned in Oakland, California. *See* Compl. ¶ 39; Compl., Ex. B. The DOT listed First American as the trustee and MERS as the beneficiary and nominee for the lender and the lender's successors and assigns. Compl., Ex. B.

In December 2003, Mortgage Store transferred the loan to Impac, which transferred it to the Impac Trust for securitization, but both transfers were defective. *See* Compl. ¶¶ 28-32; Docket No. 43 ("Joint Case Management Statement") at 2. In particular, the second transfer was untimely, occurring after the alleged closing date for the Impac Trust. *See* Compl. ¶ 32. Although this motion to dismiss concerns Impac's actions, Mr. Ratliff's arguments concern both Impac's actions and that of the Impac Trust (through its trustee), because Mr. Ratliff conflates Impac and the Impac Trust. *See* Joint Case Management Statement at 2 ("the Mortgage Store's sale of Plaintiff's loan to Impac was void as Plaintiff's note was not timely sold and transferred to the Trust Pool").

In July 2005, MERS replaced First American with ETS as trustee. *See* Docket No. 40, Ex. A (substitution of trustee). On the same day, ETS, acting at MERS' behest, issued a notice of default on the real property at issue. *See* Compl., Ex. I (notice of default). The notice of default was rescinded in August 2005. *See* Compl., Ex. J (rescission).

In February 2006, ETS issued another notice of default. The notice indicated that ETS was taking action on behalf of MERS. *See* Compl., Ex. K (notice of default).

In May 2006, ETS recorded a notice of trustee's sale against the real property. *See* Compl., Ex. L (notice of trustee's sale). For an unknown reason, that sale did not take place.

Though not alleged in the Complaint, Impac asserts without contradiction from Mr. Ratliff

that the Impac Trust terminated in June 2007, whereupon Mr. Ratliff's loan was transferred back to Impac. Docket No. 55 ("Hearing Tr.") at 13-16. The parties also agree that Impac sold the loan to EMC in July 2007. Docket No. 43 ("Joint Case Management Statement") at 3; Docket No. 44 ("Opp.") at 11 (arguing that Impac's sale of the loan to EMC in July 2007 was a foreclosure).

In August 2007, after the sale of the loan, MERS (via ETS) recorded a second notice of trustee's sale. *See* Compl., Ex. M (notice of trustee's sale).

In October 2007, the sale took place, and EMC purchased the property. *See* Compl., Ex. N (trustee's deed upon sale).

In October 2013, EMC transferred the property to Homesales by grant deed. *See* Compl., Ex. O (grant deed).

In November 2013, Homesales filed an unlawful detainer action in state court against the front unit of the real property. *See* Compl. ¶¶ 50, 55. Homesales prevailed on that action in March 2017. *See* Compl. ¶ 52.

In February 2014, Homesales filed an unlawful detainer action against the back unit of the real property. *See* Compl. ¶¶ 50, 55. That action is pending.

In January 2017, Mr. Ratliff filed a Chapter 7 petition in bankruptcy court. *See* Compl. ¶ 56. Apparently responding to the bankruptcy filing, Chase sent a letter to Mr. Ratliff in February 2017 offering him the opportunity to reaffirm he balance on his mortgage loan. Compl., Ex. W (letter). The letter confused Mr. Ratliff, because it appeared to him that Chase was claiming a debt was still owed, but Homesales claimed to own the real property after a foreclosure. *See* Compl. ¶ 58. Mr. Ratliff therefore commissioned a "Forensic Chain of Title Securitization Analysis," which revealed the existence of the Impac Trust and its connection to the loan. Compl. ¶ 58; *see also* Compl., Ex. G ("Forensic Report").

In April 2017, the Mr. Ratliff filed the instant action.

## II. THE INSTANT LITIGATION

The basic thrust of Mr. Ratliff's complaint is that Homesales has no right to the real property at issue because the property was conveyed by companies who did not have an ownership interest in the real property. Mr. Ratliff's complaint does not allege that specific agency

3

relationship, but it alleges that each defendant acted as the agent of each other defendant, and that each defendant "expressly authorized or ratified" every act alleged in the complaint. Compl. ¶ 19. In reliance on these agency relationships, he alleges that each defendant is liable to him for the harms he suffered. *Id.* Mr. Ratliff seems to want both damages based on the wrongful foreclosure as well as a "return" of the property back to him (without any accompanying debt). *See, e.g.*, Compl. ¶¶ 35-36.

Mr. Ratliff has brought the following claims against Impac: (1) wrongful foreclosure, (2) violation of the FDCPA, (3) violation of the state analogue to the FDCPA, the Rosenthal Fair Debt Collection Practices Act, (4) violation of the FCRA, (5) violation of the state analogue to the FCRA, the California Consumer Credit Reporting Agencies Act, (6) intentional interference with prospective economic advantage, (7) libel and slander, (8) violation of § 17200, and (9) declaratory relief.

### III. DISCUSSION

Impac seeks to dismiss all claims brought against it. Most generally, it argues that the *Rooker-Feldman* and *Younger* abstention doctrines require this Court to decline to consider the claims. In the alternative, it argues that res judicata bars the claims. Impac also submits a variety of arguments specific to each claim, including running of the statutes of limitations.

Mr. Ratliff responds only to Impac's arguments regarding abstention, res judicata, wrongful foreclosure, the FDCPA, the FCRA, and § 17200.[1] He fails to defend his remaining claims, to wit, the state analogs to the FDCPA and the FCRA, intentional interference with prospective economic advantage, libel and slander, and declaratory relief. These claims are therefore dismissed with prejudice.

A. Subject Matter Jurisdiction

Moving defendant Impac seeks to dismiss all claims brought against it under Rule 12(b)(1), arguing that the *Rooker-Feldman* and *Younger* abstention doctrines deprive this Court of

---

[1] Ratliff also purports to defend a quiet title claim, Opp. at 15, but Ratliff has not made such a claim against Impac. His one-sentence quiet title defense appears to be an artifact of copying and pasting from his previous opposition.

4

1 subject matter jurisdiction. Mot. at 5-8.

   1. *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine, district courts lack jurisdiction to hear "cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 291 (2005); *see also Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003) (*Rooker-Feldman* bars federal cases "complain[ing] of a legal wrong allegedly committed by the state court, and seek[ing] relief from the judgment of that court."); *Skinner v. Switzer*, 562 U.S. 521, 531-32 (2011) (emphasizing "the narrow ground occupied by the doctrine" and noting that the Supreme Court has only found the doctrine to bar jurisdiction in the *Rooker* and *Feldman* cases themselves). Such cases are of an appellate character, while district courts' jurisdiction is "strictly original." *Exxon Mobil*, 544 U.S. at 284 (quoting *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).

*Rooker-Feldman* is only triggered where the injury is caused by the state-court judgment itself. It does not apply where the legal wrong that the plaintiff asserts is "an allegedly illegal act . . . by an adverse party" instead of "an erroneous decision by the state court." *Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Noel*, 341 F.3d at 1164). *Compare Exxon Mobil*, 544 U.S. at 284 (*Rooker-Feldman* did not bar federal-court suit concerning same matter as in state-court suit, despite entry of judgment in the latter), *with Cooper v. Ramos*, 704 F.3d 772, 779-80 (9th Cir. 2012) (*Rooker-Feldman* barred federal-court action challenging state court's denial of request for DNA test as itself violative of due process). *Rooker-Feldman* does not forbid subject matter jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil*, 544 U.S. at 293. *Rooker-Feldman* bars jurisdiction where the plaintiff asserts that the state-court judgment itself was a legal injury. *Noel*, 341 F.3d at 1163. But where the federal plaintiff complains of a "legal injury caused by an adverse party," litigates that issue to judgment in state court, then attempts to relitigate the issue in federal court, "*Rooker-Feldman* does not bar jurisdiction." *Id.* at 1163-64. In that case, however, "the federal plaintiff may be precluded from relitigating that dispute under

5

. . . the preclusion rule." *Id.*

*Rooker-Feldman* does not apply here because Mr. Ratliff does not challenge injury caused by a state-court judgment or request relief from that judgment. This case is not an appeal of a state-court judgment under *Rooker-Feldman*. Although Mr. Ratliff's claims are related to his prior state-court litigation, he does not complain of legal injury *caused by* the state-court judgments themselves. Though he references these judgments, Mr. Ratliff's allegations of wrongdoing all pertain to the *defendants'* conduct. *See* Compl. ¶¶ 50-55; *see also Noel*, 341 F.3d at 1163 (*Rooker-Feldman* bars actions that "assert[] as their legal injury the state court judgment"). Thus, Mr. Ratliff does not "complain[] of injuries caused by state-court judgments rendered before the district court proceedings commenced" under *Rooker-Feldman*. *Exxon Mobil*, 544 U.S. at 284.

Nor does Mr. Ratliff "invit[e] district court review and rejection of" the state-court judgments. *Id.* at 284. To meet this requirement, the action must "function[] as a de facto appeal." *Cooper*, 704 F.3d at 777. To determine whether the plaintiff "seeks relief from the judgment of [the state] court," the federal court must "pay close attention to the *relief* sought by the federal-court plaintiff." *Id.* at 777-78 (emphasis in original) (citations and internal quotation marks omitted). Mr. Ratliff's prayer for relief does not refer to the state-court judgments in any way; he does not seek to nullify a state-court judgment. Compl. at 48-49. Although some of the relief requested would be in tension with the state-court judgments,[2] that is insufficient to bar jurisdiction. *Compare Exxon Mobil*, 544 U.S. at 293 (a federal court does not lack jurisdiction simply because the federal relief requested would "den[y] a legal conclusion that a state court has reached"), *with Rooker*, 263 U.S. 413 (jurisdiction barred where plaintiff asked federal district court to declare state-court judgment "null and void")*, and District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (jurisdiction barred where plaintiffs petitioned district court to review and reverse D.C. Court of Appeal's denial of request for waiver from rule restricting bar

---

[2] *See* Compl. at 48-49 (requesting a "[d]eclar[ation] that Defendants lack any interest in the subject property which would permit them to foreclose," or "an order compelling defendants to remove any instrument which could be construed as constituting a cloud upon Plaintiff's title to the Subject Property," or an order "restraining Defendants . . . from continuing or initiating any eviction action against the property").

6

admission to graduates of accredited law schools).[3]

Impac cites *Bianchi v. Rylaarsdam*, 334 F.3d 895 (9th Cir. 2003), to argue that Mr. Ratliff's claims are precluded as de facto appeals because they are "inextricably intertwined" with the state-court claims. But "a federal suit is not a forbidden de facto appeal because it is 'inextricably intertwined' with something." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). Instead, the "inextricably intertwined" analysis only "allows courts to dismiss claims closely related to claims that are themselves barred under *Rooker-Feldman*." *Kougassian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004); *see also Noel*, 341 F.3d at 1158 ("The *premise* for the operation of the 'inextricably intertwined' test in *Feldman* is that the federal plaintiff is seeking to bring a forbidden de facto appeal." (emphasis added)); *Belinda K. v. County of Alameda*, Case No. 10-cv-05797-LHK, 2011 WL 2690356, at *23 (N.D. Cal. July 8, 2011) (holding that "for a claim to be barred because it is inextricably intertwined with a forbidden de facto appeal, that appeal must be brought to the court as well"). Though Impac also cites *Thompson v. Santa Cruz County Human Servs. Dep't*, Case No. 12-cv-03894-LHK, 2013 WL 1750960 (N.D. Cal. Apr. 23, 2013) (citing *Cooper*, 704 F.3d at 778) to support its "inextricably intertwined" argument, that case actually contradicts Impac's position. *Thompson* confirmed that the "inextricably intertwined" test "is *only* applied if the Court has already determined that *Rooker-Feldman* applies because the plaintiff is seeking a prohibited de facto appeal." *Id.* at *5.

Here, Mr. Ratliff "has asserted no legal error by the state court" and "is therefore not

---

[3] Some courts previously treated claims as "de facto appeals" where the claims "are inextricably intertwined with the state court's decision such that adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (internal quotation marks omitted) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (district court lacked jurisdiction over plaintiff's allegations that opposing parties in state court committed extrinsic fraud upon the court where the same claims were presented to, and rejected by, the state court). *Reusser* appears to be an aberration and in tension with *Exxon Mobil*, which held that the adjudication of an identical claim—where it is not an appeal of the state court judgment—should be disposed of by a preclusion analysis (*i.e.*, res judicata or collateral estoppel) rather than on jurisdictional grounds. Subsequently, in *Cooper*, the Ninth Circuit held, "Our circuit has emphasized that '[o]nly when there is already a forbidden de facto appeal in federal court does the inextricably intertwined test come into play.'" *Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir. 2012) (alteration in original) (internal quotation marks omitted) (quoting *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003)). *Cooper*, rather than *Reusser*, controls.

bringing a de facto appeal under *Rooker-Feldman*." *Kougasian*, 359 F.3d at 1143 (claims were not barred where plaintiff alleged that opposing parties in state court had committed extrinsic fraud upon the court, rather than error by court itself). Thus, "there are no issues with which the issues in [his] federal claims are 'inextricably intertwined' within the meaning of *Rooker-Feldman*." *Id.* The fact that the causes of action "are essentially identical to the causes of action already adjudicated" in the state court, while perhaps sufficient to invoke claim preclusion, does not deprive the Court of subject matter jurisdiction under *Rooker-Feldman*. *Id.*

2. *Younger*

Impac also argues that the Court lacks subject matter jurisdiction under *Younger* "[t]o the extent that Plaintiff premises all or any part of his claims upon the pending unlawful detainer action" in state court. Mot. at 7. As stated above, Homesales currently has pending against Mr. Ratliff an unlawful detainer action as to the property's back unit. *See* Compl. ¶ 55. The Complaint requests that Homesales be enjoined from further prosecuting that action. *See* Compl. ¶ 164.

*Younger* is a doctrine requiring federal district courts to decline jurisdiction in cases that would interfere with pending state-court proceedings of a particularly important nature. *See ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754 (9th Cir. 2014). "In civil cases, . . . *Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink*, 754 F.3d at 759. The third requirement is not met here, because the unlawful detainer action in state court does not implicate important state interests. *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1167-68 (9th Cir. 2013). Rather, actions, such as the state unlawful detainer actions, generally are "garden variety civil litigation between private parties," *id.* at 1168, and "neither [the Ninth Circuit] nor the Supreme Court has held *Younger* to apply generally to ordinary civil litigation." *Id.* at 1167 (quoting *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011)). Mr. Ratliff has not demonstrated otherwise.

Neither *Rooker-Feldman* nor *Younger* applies, and the Court therefore has jurisdiction over

8

Mr. Ratliff's claims. The effect of the state-court judgments, if any, must instead be analyzed under preclusion principles, discussed below.

B.  Res Judicata

Impac raises a res judicata defense based on Mr. Ratliff's three prior state-court lawsuits. The three suits were:

- *Ratliff I*. The named defendants included MERS and ETS. Mr. Ratliff initiated the case in August 2008 and it was resolved in July 2009. *See* Docket No. 40 ("Defs.' RJN"), Exs. B-C (complaint and amended complaint to, *inter alia*, set aside foreclosure sale); Defs.' RJN, Ex. D (order sustaining demurrer) (taking note of "allegation that there was irregularity in the foreclosure sale that resulted in EMC obtaining title to the property"; stating that "[t]he facts do not show that Plaintiff has any enforceable right to reacquire the property" and that, "[b]ased on the facts alleged, Plaintiff cannot establish the element of causation, which is fatal to all of his claims based on loss of the property").

- *Ratliff II*. The named defendants were MERS and EMC. Mr. Ratliff initiated the case in April 2010 and it was resolved (on appeal) in December 2013. *See* Defs.' RJN, Ex. E (complaint for, *inter alia*, wrongful foreclosure); Defs.'s RJN, Ex. F (order sustaining demurrer); *Ratliff v. Mortg.*, No. A132886, 2013 Cal. App. Unpub. LEXIS 8797 (Cal. Ct. App. Dec. 5, 2013) (concluding res judicata is a bar to the action against EMC).

- *Ratliff III*. The named defendants were EMC and Homesales. Mr. Ratliff initiated the case in June 2014 and it was resolved in November 2014. *See* Defs.' RJN, Ex. H (complaint for, *inter alia*, violation of § 17200 and quiet title); Defs.' RJN, Ex. I (order sustaining demurrer) (taking note of concession that the issue of wrongful foreclosure was not being relitigated; stating that "Plaintiffs concede that Lonnie lost title to the properties in 2007 [and] Plaintiffs have not alleged how they lost money or property as a result of the alleged robo-signing of the Grant Deed in 2013").

Because the prior judgments were issued by state courts, state law on res judicata applies. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379-80 (1985). Under California law, res judicata is "an umbrella term encompassing both claim preclusion and issue preclusion."

9

*DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 823-24 (2015). "Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits of the first suit. If claim preclusion is established, it operates to bar relitigation of the claim altogether." *Id.* at 824-25 (citations omitted). It bars not only claims adjudicated but those which could have been brought. *Thompson v. Ioane*, 11 Cal. App. 5th 1180, 1191 (2017). Moreover, claim preclusion does not strictly require the "same" parties; parties in privity are also bound thereby. *DKN Holdings*, 61 Cal. 4th at 823-24. The three prior state-court suits were final judgments on the merits. *See* Docket No. 25 ("Prior Order") at 9. The only issues concern the first two requirements of claim preclusion.

1. <u>Same Parties</u>

Mr. Ratliff alleges that Impac had an agency relationship with every other defendant. Compl. ¶¶ 19-20. This alleged agency relationship is clarified in Mr. Ratliff's briefs, where he specifies that MERS and ETS acted as Impac's agents. *See* Opp. at 3:12-13 ("MERS and Executive Trustee, as agents for Impac . . . proceeded to record . . . notices of trustee's sale, and Executive Trustee sold Plaintiff's home . . . ."), 11:6-8 ("foreclosure proceeding . . . presumably occurred at Impac's direction and through its agents, MERS, First American and Executive Trustee"), 12:18-20 (arguing that "Impac and its agents" did not have standing to foreclose), 15:3-5 (referring to "Impac and its agents"). Mr. Ratliff also argued at the motion hearing that MERS and ETS acted as Impac's agents. Hearing Tr. at 8:15-20 ("MERS through Executive Trustee recorded the notice of default and at that time MERS and Executive Trustee were acting as agents for Impac . . . ."); *id.* at 8:22. Crediting Mr. Ratliff's own allegations of agency, the "same parties" requirement is met because MERS and ETS were defendants in the state-court cases. *See* Docket No. 20, Ex. C (amended complaint); *DKN Holdings*, 61 Cal. 4th at 827 ("When a defendant's liability is entirely derivative from that of a party in an earlier action, claim preclusion bars the second action because the second defendant stands in privity with the earlier one."). The agency allegations are material to Mr. Ratliff's claims against Impac; Impac did not itself foreclose on Mr. Ratliff's home. Thus, without the agency relationship between MERS and ETS on one hand and Impac on the other, Mr. Ratliff would have no claim for wrongful foreclosure

10

against Impac. *See* Compl. ¶¶ 28-30, 32 (only allegations specifically regarding Impac); Opp. at 3-4 (fact section of Opposition describing Impac's involvement as limited to acting as principal of agents MERS and ETS). Mr. Ratliff cannot have it both ways—either privity obtains because of agency or there is no wrongful foreclosure claim against Impac if agency is lacking.

2. Same Cause of Action

Two claims are based on the same cause of action if they are premised on the same "primary right." *Gillies v. JPMorgan Chase Bank, N.A.*, 7 Cal. App. 5th 907, 914 (2017) (quoting *In re Estate of Dito*, 198 Cal. App. 4th 791, 801 (2011)). "The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based." *Id.* (quoting *In re Estate of Dito*, 198 Cal. App. 4th at 801).

Though Mr. Ratliff argues that the "primary rights" in his prior and current lawsuits diverge, his argument advanced herein is identical to that previously rejected by this Court. As in the prior motion to dismiss, Mr. Ratliff's argument is that

> here, the primary right is his right to be free from a wrongful foreclosure *based on Defendants' lack of an ownership interest* but, in the prior state court actions, the primary right was the right to be free from a wrongful foreclosure *based on a different factual predicate* – e.g., "(1) an auctioneer's misrepresentations to [him] that [the] property would be sold back to [him]; (2) the fact that the purchaser of [the] property (Defendant EMC . . . ) at the foreclosure sale did not actually possess [the] promissory note; and (3) that the 2013 grant deed of [the] property [from EMC] to Defendant Homesales was robo-signed."

Prior Order at 10. This argument fails. Though Mr. Ratliff presents a new legal theory for wrongful foreclosure, the inquiry turns on Mr. Ratliff's "right to be free from a particular injury, regardless of the legal theory on which liability is based." *Gillies*, 7 Cal. App. 5th at 914. The particular injury alleged in this suit is wrongful foreclosure—the same injury as alleged in the prior suits. Thus, the suits are concerned with the same primary right and the same cause of action. Though Mr. Ratliff did not present his current legal theory in the prior cases, "[c]laim preclusion . . . bars claims that could have been raised in the first proceeding." *Thompson*, 11 Cal. App. 5th at 1191 (internal quotation marks omitted) (quoting *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1164 (2016)).

11

Mr. Ratliff relies on *Constantini v. Trans World Airlines*, 681 F.2d 1199 (9th Cir. 1982), for a different standard of res judicata. Under *Constantini*, four factors decide whether successive suits involve a single cause of action: "(1) whether rights or interest established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.* at 1201-02. This differs from the *Gillies* standard, under which the "same cause of action" inquiry turns only on whether the two suits involve the same primary right. Mr. Ratliff focuses on the fourth factor, arguing that the transactional nucleus of facts between his prior suits and this suit diverge. But *Constantini* states the res judicata standard for prior federal-court judgments, not state-court judgments. *Id.* at 1201 ("California law . . . determines the res judicata effect of a prior *federal* court judgment by applying federal standards." (emphasis added)). All three prior suits were in state court and *Constantini* is inapplicable. Whether the two suits arose out of the same transactional nucleus of facts is not a consideration under the California standard in *Gillies*, which focuses only on whether the two suits involve the same primary right. Instead, the primary right is determined by the "particular injury" from which the plaintiff seeks relief. As discussed above, the particular injury in both the prior and instant suits is the allegedly wrongful foreclosure in 2007. The prior and instant suits therefore concern the same cause of action under *Gillies*.

3. Delayed Discovery Exception to Res Judicata

In an attempt to avoid res judicata, Mr. Ratliff invokes the delayed discovery rule under *Allied Fire Protection v. Diede Construction, Inc.*, 127 Cal. App. 4th 150, 156 (2005). The delayed discovery rule permits avoidance of res judicata where the successive suit is based on newly discovered facts that diligence could not have uncovered sooner. *Id.* at 156. Mr. Ratliff argues that the present suit is based on "the completely, newly discovered fact that his loan was purported[ly] sold to a securitized trust pool." Opp. at 8. But again this Court has previously rejected this same argument. Prior Order at 11-12. While Mr. Ratliff adds two short paragraphs to this argument this time, they merely emphasize the points recycled from his prior opposition.

12

*See id.* at 9. As before, Mr. Ratliff's invocation of the delayed discovery exception is entirely conclusory. Though he claims that he could not have previously discovered that his loan was sold to a securitized trust pool, he fails to state why. As discussed in the prior order, nothing prevented Mr. Ratliff from commissioning the forensic audit that revealed the securitization of his loan, and he has made no arguments that such an audit is not within the ambit of due diligence. Prior Order at 8. In other words, Mr. Ratliff has not shown that he should not have known of the wrongful foreclosure based on a lack of an ownership interest at the time he filed the state lawsuits. *Id.* at 11-12.

C. <u>Statute of Limitations</u>

Impac raises a statute of limitations defense for each of Mr. Ratliff's claims. While the statute of limitations is an affirmative defense and "complaints do not ordinarily need to allege the non-availability of affirmative defenses," case law is clear that "the statute of limitations may be raised in a motion to dismiss '[w]hen the running of the statute is apparent from the face of the complaint.'" *Baldain v. Am. Home Mortg. Serv'g, Inc.*, No. CIV. S-09-0931 LKK/GGH, 2010 WL 56143, at *4 (E.D. Cal. Jan. 5, 2010) (quoting *Conerly v. Westinghouse Elect. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980)). Such is the case here. The trustee's sale took place years back in October 2007. Mr. Ratliff did not initiate this lawsuit until April 2017. Mr. Ratliff has failed to point to any cause of action that has a statute of limitations of more than nine years.

As to the wrongful foreclosure and FDCPA claims, Mr. Ratliff's only argument against untimeliness is his invocation of equitable tolling and the delayed discovery rule. *See* Opp. at 10 (invoking delayed discovery rule as to wrongful foreclosure), 14-15 (same as to FDCPA and FCRA claims). His arguments are identical to those discussed in his invocation of the delayed discovery rule in the res judicata discussion above, *see* Part III.B.3, *supra*, and they fail for the same reasons. For the same reasons previously stated by this Court, the wrongful foreclosure and FDCPA claims are time-barred.

As to the FCRA claim, Mr. Ratliff makes no specific arguments. He purports to defend the FDCPA and FCRA claims together, *see* Opp. at 14 (header indicates arguments for FDCPA and FCRA), but the actual arguments relate only to the FDCPA claim. *Compare* Opp. at 14

13

(defending against one-year statute of limitations); 15 U.S.C. 1692k(d) (FDCPA's one-year statute of limitations), *with* 15 U.S.C. § 1681p (FCRA's two- and five-year statute of limitations). To the extent that Mr. Ratliff seeks to apply the equitable tolling and delayed discovery rule arguments to the FCRA claim, they are inapposite for the above reasons. The FCRA claim is therefore time-barred.

As to the § 17200 claim, Mr. Ratliff does not argue that it survives the statute of limitations, which is four years. Cal. Bus. & Prof. Code § 17208. The § 17200 claim is therefore time-barred.

D.  Failure to State a Claim for Relief

Even if res judicata and the statutes of limitations were not applicable, Mr. Ratliff fails to state a viable claim for relief against Impac.

1.  Wrongful Foreclosure

In addition to the statute of limitations argument, Impac argues that the wrongful foreclosure claim should be dismissed for two other reasons.

a.  Impac Did Not Foreclose on the Property

First, Impac argues that Mr. Ratliff failed to allege that it engaged in any foreclosure activity. Mot. at 8. It notes that the notices of default and notices of trustee's sale were recorded by ETS and First American, not Impac. *Id.* at 9; *see* Compl., Exs. I-M. ETS then sold the property to EMC in October 2007. California law requires the plaintiff in a wrongful foreclosure action to allege that "defendants cause an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust." *Chavez v. Indymac Mortg. Svcs.*, 219 Cal. App. 4th 1052, 1062 (2013). Mr. Ratliff protests that "Impac acknowledges that . . . they sold Plaintiff's loan to EMC Mortgage on July 27, 2007. In fact, this 'sale' of Plaintiff's loan was the completed foreclosure proceeding." Opp. at 11 (internal quotation marks omitted) (citation omitted). Mr. Ratliff confuses the sale of the loan with the sale of the property. As Mr. Ratliff indicates, Impac appears to have sold the *loan* to EMC in July. ETS, as trustee, recorded a notice of trustee's sale in August and sold the *property* to EMC in October—this sale of the property was the foreclosure at issue herein. A sale of a loan, by contrast, is not a foreclosure.

14

Impac was no longer involved with the property by the time ETS recorded a notice of trustee's sale. The fact that EMC bought both the loan and the property is not material to Mr. Ratliff's wrongful foreclosure claim. Mr. Ratliff has not alleged that Impac owned the loan or controlled the property at the time of the notice of trustee's sale in August 2007 and the trustee's sale itself in October 2007.

Mr. Ratliff attempts to link Impac to the foreclosure sale by claiming an agency relationship between Impac and ETS and MERS. *See* Opp. at 3:12-13 ("MERS and Executive Trustee, as agents for Impac . . . proceeded to record . . . notices of trustee's sale, and Executive Trustee sold Plaintiff's home . . . ."), 11:6-8 ("foreclosure proceeding . . . presumably occurred at Impac's direction and through its agents, MERS, First American and Executive Trustee"), 12:18-20 (arguing that "Impac and its agents" did not have standing to foreclose), 15:3-5 (referring to "Impac and its agents"); Hearing Tr. at 8:15-20 ("MERS through Executive Trustee recorded the notice of default and at that time MERS and Executive Trustee were acting as agents for Impac . . . ."); *id.* at 8:22. But, as noted above, if such an allegation of agency is credited, he cannot succeed because claim preclusion would bar his claim. *See* Part III.B, *supra*. In any event, aside from res judicata, the agency allegations fail to state a claim because they are too conclusory especially given the fact that Impac no longer owned the loan at the time of the foreclosure in 2007. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (claims do not survive a motion to dismiss where insufficient factual allegations make claims implausible).

### b.   Mr. Ratliff Lacks Standing

Impac also argues that Mr. Ratliff lacks standing to challenge the transfer of the loan into the Impac Trust for securitization. Mot. at 9-10; *see also* Reply at 5. Mr. Ratliff alleges the securitization was untimely. *See* Compl. ¶¶ 28, 32; Joint Case Management Statement at 2 ("the Mortgage Store's sale of Plaintiff's loan to Impac was void as Plaintiff's note was not timely sold and transferred to the Trust Pool"). Impac argues that Mr. Ratliff cannot challenge the 2003 transfer and securitization as untimely, because such untimeliness "renders the assignment voidable, not void." Mot. at 9 (quoting *Yhudai v. Impac Funding Corp.*, 1 Cal. App. 5th 1252, 1259 (2016)). Under California law, borrowers have standing to challenge void loan

15

1  assignments—that is, assignments that are void *ab initio*—but not voidable ones, which can be
2  ratified *post hoc*. *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 939 (2016).

3        Mr. Ratliff has alleged no facts regarding the governing law on the question of whether the
4  timing problem made the transfer void or voidable. A party challenging a nonjudicial foreclosure
5  must plead affirmative facts demonstrating improper action. *See Fontenot*, 198 Cal. App. 4th at
6  270. This burden includes the burden to plead facts demonstrating standing. *See Saterbak v.
7  JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 813-14 (2016). Nevertheless, judicially
8  noticeable facts indicate that the trust agreement was formed under Delaware law. Docket No. 61,
9  Ex. K at § 10.11. Although Delaware law does not use the "void or voidable" formulation, it
10 provides that "the debtor lacks standing to contest the validity of an assignment of its note on the
11 grounds that the [agreement]'s terms were not followed by the parties involved in the transfer,"
12 where this violation of the agreement's terms does not affect a debtor's ability to pay on the
13 underlying loan, and the debtor is not a third party beneficiary to the agreement. *Toelle v.
14 Greenpoint Mortg. Funding, Inc.*, No. S14C-05-035, 2015 WL 5158276, at *4 (Del. Super. Ct.
15 Apr. 20, 2015); *see also Nationstar Mortg., LLC v. Sears*, S14L-06-002 (RFS), 2015 WL
16 4719941, at *4-5 (Del. Super. Ct. Aug. 7, 2015). Further, where the mortgagee is undisputedly in
17 default, foreclosure even by one purportedly not in possession of the mortgagee's loan "cannot be
18 said to have caused [the debtor] injury," because "[the debtor's] home would be subject to
19 foreclosure even absent [the alleged fraudulent assignment]." *CitiMortgage, Inc. v. Bishop*, 09L-
20 07-313CLS, 2013 WL 1143670, at *4 (Del. Super. Ct. Mar. 4, 2013) (alterations in original)
21 (quoting *Dehdashti v. The Bank of New York Mellon*, 1:12-cv-595-TCB (D. Ga. June 7, 2012));
22 *see JPMorgan Chase Bank, v. Smith*, S13L-08-003 (RFS), 2014 WL 7466729, at *4-5 (Del. Super.
23 Ct. Dec. 15, 2014). Lacking injury traceable to alleged misconduct, the mortgagee lacks standing
24 to challenge the validity of the assignment. Such is the case here. *Id.*

25       Mr. Ratliff has offered no substantive arguments otherwise. When it was revealed that the
26 trust was governed by Delaware law, the Court explicitly requested briefing from Mr. Ratliff
27 discussing his standing to sue given that new fact. Docket No. 63. In response, he discusses a
28 federal case concerning Massachusetts law, dwells on the fact that "[i]f Defendant did not have

standing to foreclose, each of its subsequent actions were void" without actually challenging Impac's right to foreclose, and reviews New York cases regarding a New York statute. Docket No. 66. Mr. Ratliff thus not only failed to allege facts demonstrating his standing to sue, he failed to make arguments to that effect even when specifically invited to do so.

For all of the above reasons, the wrongful foreclosure claim is dismissed with prejudice.

### 2. Violation of FDCPA

Impac argues that the Court should dismiss the FDCPA claim, because it is not a debt collector and because it did not "tak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property" without the "present right to possession of the property." Mot. at 11 (quoting 15 U.S.C. § 1692f(6)). Mr. Ratliff's only response is that Impac did take such wrongful action, because "the foreclosure sale . . . was completely void as it was conducted by a party (Defendant Impac) . . . who had no standing to foreclose." Opp. at 14. As stated in the wrongful foreclosure discussion, Mr. Ratliff has not alleged that Impac was involved in the foreclosure. To the extent that he has via agency allegations, claim preclusion bars this claim. *See* Part III.B, *supra*.

In addition, Mr. Ratliff fails to respond to Impac's contention that it is not a debt collector. A debt collector under the FDCPA is an entity whose "principal business . . . is the collection of . . . debts, or who regularly collects or attempts to collect, directly or indirectly, debts." 15 U.S.C. § 1692a(6). Creditors attempting to collect on their loans are not debt collectors under the FDCPA. *Id.* § 1692a(6)(A)-(B); *see also Herrera v. U.S. Bank Nat'l Ass'n*, No. 14cv0134 JM(BLM), 2014 WL 1806923, * (S.D. Cal. May 5, 2014) ("The law is well-settled that creditors, mortgagors (sic), and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." ((sic) in original) (quoting *Aguirre v. Cal-Western Reconveyance Corp.*, No. CV-11-6911, 2012 WL 273753, at *7 (C.D. Cal. Jan. 30, 2012)). Mr. Ratliff's only allegation on this issue is that "Defendants are 'debt collectors' . . . as they regularly collect debts." Compl. ¶ 120. This conclusory repetition of the law is insufficient under *Twombly* and *Iqbal*'s plausible pleading standard. *See Iqbal*, 556 U.S. at 679.

Because Mr. Ratliff fails to allege that Impac was involved in the foreclosure or that it is a

17

debt collector, he has failed to state a claim for Impac's violation of the FDCPA.

3. <u>Violation of FCRA</u>

Impac argues that the Court should dismiss the FCRA claim because (1) Mr. Ratliff does not allege that Impac furnished information to a credit reporting agency, (2) the § 1681s-2(a) claim that Mr. Ratliff appears to make does not permit a private action, and (3) Ratliff does not allege that Impac received notice of a credit-report dispute, as required by Mr. Ratliff's apparent § 1681s-2(b) claim. Mot. at 12-14. Mr. Ratliff fails to respond to these arguments, only stating in a header that "Plaintiff Has Stated Facts Sufficient to State a Cause of Action for Violation[] of . . . the Fair Credit Reporting Act." Opp. at 14. Because Mr. Ratliff fails to defend this claim either substantively or regarding the statute of limitations, his claim is dismissed.

4. <u>Violation of § 17200</u>

In addition to the statute of limitations defense, Impac argues that the Court should dismiss the § 17200 claim for a variety of other reasons. *See* Mot. at 17-19. Mr. Ratliff's only response is grounded in his wrongful-foreclosure claim against Impac. *See* Opp. at 15-16. Because Mr. Ratliff has not successfully alleged that Impac was involved in the 2007 foreclosure in any way, *see* Part III.D.1, *supra*, the § 17200 claim is dismissed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, each of Mr. Ratliff's claims against Impac is dismissed. Because amendment would be futile for the reasons stated above, the claims are **DISMISSED** with prejudice.

This order disposes of Docket No. 39.

**IT IS SO ORDERED**.

Dated: November 29, 2017

_____
EDWARD M. CHEN
United States District Judge