United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE RATLIFF,<br><br>    Plaintiff,<br><br>    v.<br><br>MORTGAGE STORE FINANCIAL, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-02155-EMC<br><br>**ORDER GRANTING DEFENDANT DEUTSCHE BANK NATIONAL TRUST COMPANY'S MOTION TO DISMISS**<br><br>Docket No. 60 |

## I. INTRODUCTION

Plaintiff Lonnie Ratliff, Jr., brought this case to challenge the foreclosure of an Oakland property that he previously owned. He has brought suit three times in state court, alleging that various entities involved in his foreclosure acted improperly. Mr. Ratliff's instant Complaint names nine defendants. One of those nine, Defendant Deutsche Bank National Trust Company ("Deutsche Bank"), now moves to dismiss, raising arguments similar to many of those raised by now-dismissed Defendant Impac Mortgage Holdings, Inc., in its motion to dismiss. *See* Docket No. 74 (order granting Impac's motion to dismiss).

## II. FACTUAL BACKGROUND

As noted in this Court's order dismissing Impac, the Complaint, though somewhat unclear, appears to allege the following facts:

In October 2003, Mr. Ratliff obtained a $630,000 loan from Mortgage Store. The loan was secured with a deed of trust ("DOT") upon certain real property he owned in Oakland, California. *See* Docket No. 1 ("Compl.") ¶ 39; Compl., Ex. B. The DOT listed First American as the trustee and MERS as the beneficiary and nominee for the lender and the lender's successors and assigns.

Compl., Ex. B.

In December 2003, Mortgage Store transferred the loan to Impac, which transferred it to the Impac Trust for securitization, but both transfers were defective. *See* Compl. ¶¶ 28-32; Docket No. 43 ("Joint Case Management Statement") at 2. In particular, the second transfer was untimely, occurring after the December 18 closing date for the Impac Trust. *See* Compl. ¶ 32. Deutsche Bank was the trustee for the Impac Trust.

In July 2005, MERS replaced First American with ETS as trustee. *See* Docket No. 61 ("Def's RJN"), Ex. A (substitution of trustee). On the same day, ETS, acting at MERS' behest, issued a notice of default on the real property at issue. *See* Compl., Ex. I (notice of default). The notice of default was rescinded in August 2005. *See* Compl., Ex. J (rescission).

In February 2006, ETS issued another notice of default. The notice indicated that ETS was taking action on behalf of MERS. *See* Compl., Ex. K (notice of default).

In May 2006, ETS recorded a notice of trustee's sale against the real property. *See* Compl., Ex. L (notice of trustee's sale). For an unknown reason, that sale did not take place.

Though not alleged in the Complaint, Deutsche Bank asserts without contradiction from Mr. Ratliff that the Impac Trust terminated in June 2007, whereupon Mr. Ratliff's loan was apparently transferred back to Impac. *See* Docket No. 60 ("Mot.") at 4. The parties also agree that Impac sold the loan to EMC in July 2007. *See id.*; Docket No. 44 at 11 (Mr. Ratliff's Opposition to Impac's Motion to Dismiss, arguing that Impac's sale of the loan to EMC was a foreclosure).

In August 2007, after the sale of the loan, MERS (via ETS) recorded a second notice of trustee's sale. *See* Compl., Ex. M (notice of trustee's sale).

In October 2007, the sale took place, and EMC purchased the property. *See* Compl., Ex. N (trustee's deed upon sale).

In October 2013, EMC transferred the property to Homesales by grant deed. *See* Compl., Ex. O (grant deed).

In November 2013, Homesales filed an unlawful detainer action in state court against the front unit of the real property. *See* Compl. ¶¶ 50, 55. Homesales prevailed on that action in

2

1 March 2017. *See* Compl. ¶ 52.

In February 2014, Homesales filed an unlawful detainer action against the back unit of the real property. *See* Compl. ¶¶ 50, 55. That action is pending.

In January 2017, Mr. Ratliff filed a Chapter 7 petition in bankruptcy court. *See* Compl. ¶ 56. Apparently responding to the bankruptcy filing, Chase sent a letter to Mr. Ratliff in February 2017 offering him the opportunity to reaffirm he balance on his mortgage loan. Compl., Ex. W (letter). The letter confused Mr. Ratliff, because it appeared to him that Chase was claiming a debt was still owed, but Homesales claimed to own the real property after a foreclosure. *See* Compl. ¶ 58. Mr. Ratliff therefore commissioned a "Forensic Chain of Title Securitization Analysis," which revealed the existence of the Impac Trust and its connection to the loan. Compl. ¶ 58; *see also* Compl., Ex. G (forensic report).

In April 2017, the Mr. Ratliff filed the instant action. The Court has dismissed claims against five defendants. *See* Docket Nos. 25 ("Chase Order"), 74 ("Impac Order").

Mr. Ratliff has brought the following claims against Deutsche Bank: (1) wrongful foreclosure, (2) fraud in the inducement, (3) intentional interference with prospective economic advantage, (4) libel and slander, (5) violation of the California Unfair Competition Law ("UCL"), Business & Professions Code § 17200, *et seq.*, and (6) declaratory relief. Mr. Ratliff defends only the wrongful foreclosure and UCL claims. (He also purports to defend FCRA and quiet title claims, which were not brought against Deutsche Bank.) In light of Mr. Ratliff's failure to defend the remaining claims, the Court dismisses with prejudice those claims, to wit, fraud in the inducement, intentional interference with prospective economic advantage, libel and slander, and declaratory relief.

### III. DISCUSSION

A. Subject Matter Jurisdiction

Like Impac, Deutsche Bank challenges the Court's ability to consider these claims under the *Rooker-Feldman* and *Younger* abstention doctrines. Deutsche Bank's arguments on these points are similar to that in the second motion to dismiss brought by Impac, and the Court reaches the same conclusion. *See* Impac Order at 4-9. The Impac Order presents the full treatment of the

3

issue, but in short, this Court's jurisdiction is not barred by *Rooker-Feldman*, because the injury of which Mr. Ratliff complains is not that wrought by the state-court judgments against him. *See Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004) (*Rooker-Feldman* does not apply where "[t]he legal wrong that [the plaintiff] asserts . . . is not an erroneous decision by the state court [but rather] an allegedly illegal act . . . by an adverse party." (quoting *Noel v. Hall*, 341 F.3d, 1148, 1164 (9th Cir. 2003))). Instead, the injury and the harmful conduct alleged is Defendants' foreclosure of his home. Though Deutsche Bank argues that the *Rooker-Feldman* doctrine operates to bar jurisdiction here, because the instant case is "inextricably intertwined" with the state-court cases and therefore operates as a forbidden *de facto* appeal of those cases, *see* Mot. at 8-10, this is not so. "[A] federal suit is not a forbidden de facto appeal because it is 'inextricably intertwined' with something." *Noel*, 341 F.3d at 1158 (9th Cir. 2003). "[O]nly when there is already a forbidden de facto appeal in federal court does the inextricably intertwined test come into play." *Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir. 2012) (internal quotation marks omitted) (quoting *Noel*, 341 F.3d at 1158).

Deutsche Bank's also argues that the Court lacks subject matter jurisdiction under *Younger* "[t]o the extent that Plaintiff premises all or any part of his claims upon the pending unlawful detainer action" in state court. Mot. at 10. This was also addressed in the Impac Order. *See* Impac Order at 8-9. As stated there, *Younger* does not apply, because the unlawful detainer action does not "implicate an important state interest," as is required. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014).

Neither *Rooker-Feldman* nor *Younger* applies, and the Court therefore has jurisdiction over Mr. Ratliff's claims. Per Mr. Ratliff, *see* Docket No. 67 ("Opp.") at 7:6-7, the effect of the state-court judgments, if any, must instead be analyzed under preclusion principles, discussed below.

B.  Claim Preclusion

Deutsche Bank correctly argues that claim preclusion bars Mr. Ratliff's claims against Deutsche Bank. *See* Docket No. 71 ("Reply") at 3-4. Mr. Ratliff has sued and lost three times in state court regarding his foreclosure. The three suits were:

- *Ratliff I*. The named defendants included MERS and ETS. Mr. Ratliff initiated the case in

4

August 2008 and it was resolved in July 2009. *See* Def's RJN, Exs. B-C (complaint and amended complaint to, *inter alia*, set aside foreclosure sale); Def's RJN, Ex. D (order sustaining demurrer) (taking note of "allegation that there was irregularity in the foreclosure sale that resulted in EMC obtaining title to the property"; stating that "[t]he facts do not show that Plaintiff has any enforceable right to reacquire the property" and that, "[b]ased on the facts alleged, Plaintiff cannot establish the element of causation, which is fatal to all of his claims based on loss of the property").

- *Ratliff II*. The named defendants were MERS and EMC. Mr. Ratliff initiated the case in April 2010 and it was resolved (on appeal) in December 2013. *See* Def's RJN, Ex. E (complaint for, *inter alia*, wrongful foreclosure); Def's RJN, Ex. F (order sustaining demurrer); *Ratliff v. Mortg.*, No. A132886, 2013 Cal. App. Unpub. LEXIS 8797 (Cal. Ct. App. Dec. 5, 2013) (concluding res judicata is a bar to the action against EMC).

- *Ratliff III*. The named defendants were EMC and Homesales. Mr. Ratliff initiated the case in June 2014 and it was resolved in November 2014. *See* Def's RJN, Ex. H (complaint for, *inter alia*, violation of § 17200 and quiet title); Def's RJN, Ex. I (order sustaining demurrer) (taking note of concession that the issue of wrongful foreclosure was not being relitigated; stating that "Plaintiffs concede that Lonnie lost title to the properties in 2007 [and] Plaintiffs have not alleged how they lost money or property as a result of the alleged robo-signing of the Grant Deed in 2013").

The preclusive effect of these state judgments is determined by state law. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379-80 (1985). Under California law, "[c]laim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits of the first suit. If claim preclusion is established, it operates to bar relitigation of the claim altogether." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824-25 (2015) (citations omitted). It bars not only claims adjudicated but those which could have been brought. *Thompson v. Ioane*, 11 Cal. App. 5th 1180, 1191 (2017). Moreover, claim preclusion does not strictly require the "same" parties; parties in privity are also bound thereby. *DKN Holdings*, 61 Cal. 4th at 823-24. The three prior state court suits were final judgments on the

5

merits. The only issues concern the first two requirements of claim preclusion. Notably, while Mr. Ratliff argues that "[r]ather [than *Rooker-Feldman*], . . . the main issue is to consider whether Defendant can prevail under the principles of claim preclusion," Opp. at 7, he offers no arguments that claim preclusion does not bar his claims.

1. Same Parties

The key to the preclusion analysis is that every foreclosure action—the notices of default, the notice of trustee's sale, and the sale itself—was conducted by ETS and MERS, not Deutsche Bank. *See* Compl., Exs. I, K-N. To establish a claim against Deutsche Bank, Mr. Ratliff must allege that ETS and MERS acted as Deutsche Bank's agents when they carried out various foreclosure actions. *See Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1172 (2016) ("'[A] principal is liable to third parties . . . for the frauds or other wrongful acts committed by [its] agent in and as a part of the transaction of' the business of the agency." (alterations in original) (quoting *Grigsby v. Hagler*, 25 Cal. App. 2d 714, 715 (1938))). Crediting Mr. Ratliff's allegation that ETS and MERS acted as Deutsche Bank's agents, *see, e.g.*, Opp. at 3 (claiming that ETS and MERS conducted foreclosure activities as Deutsche Bank's agents), Mr. Ratliff is bound by the earlier judgment because ETS and MERS were prevailing defendants in the state suit brought by Mr. Ratliff. *See* Def's RJN, Exs. C, D. The agency between Deutsche Bank and ETS and MERS satisfies the "same parties" requirement. *See DKN Holdings*, 61 Cal. 4th at 827 ("When a defendant's liability is entirely derivative from that of a party in an earlier action, claim preclusion bars the second action because the second defendant stands in privity with the earlier one."). On the other hand, if the agency allegation were deemed too conclusory to satisfy *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), no claim can be asserted against Deutsche Bank. Thus, Mr. Ratliff is caught in a bind: either agency does not obtain and Deutsche Bank therefore is not responsible for the foreclosure activities, or agency does obtain and privity and the "same parties" requirement are met, thereby implicating claim preclusion. He cannot have it both ways.

2. Same Cause of Action

Two claims are based on the same cause of action if they are premised on the same "primary right." *Gillies v. JPMorgan Chase Bank, N.A.*, 7 Cal. App. 5th 907, 914 (2017) (quoting

*In re Estate of Dito*, 198 Cal. App. 4th 791, 801 (2011)). "The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based." *Id.* (quoting *In re Estate of Dito*, 198 Cal. App. 4th at 801).

The particular injury alleged in this suit is wrongful foreclosure—the same injury as alleged in the prior suits. Thus, the suits are concerned with the same primary right and the same cause of action. Though Mr. Ratliff did not present his current legal theory in the prior cases, the inquiry turns on Mr. Ratliff's "right to be free from a particular injury, regardless of the legal theory on which liability is based." *Gillies*, 7 Cal. App. 5th at 914. Furthermore, "[c]laim preclusion . . . bars claims that could have been raised in the first proceeding." *Thompson*, 11 Cal. App. 5th at 1191 (internal quotation marks omitted) (quoting *Daniel*, 246 Cal. App. 4th at 1164).

In any event, Mr. Ratliff makes no arguments against claim preclusion and thus he effectively concedes it. He does argue in his statute of limitations section, discussed *infra*, that he could not have timely discovered the facts that prompted this suit, namely that his loan was transferred into the Impac Trust for securitization. Opp. at 9-10. This could be construed as an argument to excuse claim preclusion: it may be argued that his claims could not have been raised in the first proceeding. However, as this Court noted in prior motions to dismiss, *see* Chase Order at 8, Impac Order at 13, nothing prevented Mr. Ratliff from earlier hiring a forensic auditor that discovered the securitization, and Mr. Ratliff has not shown that doing so was not encompassed in due diligence. He is not excused from claim preclusion.

3. Conclusion

For the foregoing reasons, either agency obtains and claim preclusion bars Mr. Ratliff's claims, or agency does not obtain and Deutsche Bank cannot be held liable for the foreclosure allegedly undertaken by ETS and MERS.

C. Issue Preclusion

Deutsche Bank argues that issue preclusion bars Mr. Ratliff's claims, because they turn on issues previously decided in state court. Mot. at 10. "[I]ssue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."

7

*DKN Holdings*, 61 Cal. 4th at 825. Mr. Ratliff takes issue with the second and fourth of these requirements. Opp. at 7-9.

1. <u>Identical Issue</u>

Deutsche Bank claims that the state courts held that Mr. Ratliff "failed to establish (1) that he tendered the outstanding loan amount to cure the default, as is required for a wrongful foreclosure action, (2) that he had suffered any injury-in-fact, (3) the element of causation, or (4) that title should be vested in him." Mot. at 10 (citing exhibits of the state-court judgments). Deutsche Bank then argues that Mr. Ratliff's instant claims turn on these issues so that the identical issue requirement is met. Mr. Ratliff objects that the issues in previous suits were based on "(1) an auctioneer's misrepresentations to Plaintiff that Plaintiff's property would be sold back to Plaintiff; (2) the fact that the purchaser of Plaintiff's property . . . at the foreclosure sale did not actually possess Plaintiff's promissory note; and (3) that the 2013 grant deed of Plaintiff's property to Defendant Homesales was robo-signed." Opp. at 7. In contrast, Mr. Ratliff argues, the instant suit is based on "the issue of whether a securitized trust that attempted to receive a post-closing date transfer of a loan, has standing to foreclose upon a property secured by that loan." *Id.*

In California, "[t]he 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Lucido v. Superior Court*, 51 Cal. 3d 335, 342 (1990) (quoting *People v. Sims*, 32 Cal. 3d 468, 485 (1982)). Here, the factual allegations in this suit and the state-court suits differ. The state-court suits focused on various defects in and after the foreclosure, while this suit focuses on defects in the securitization process preceding the foreclosure. The "identical issue" requirement is therefore not met.

Deutsche Bank's four points listed above do not indicate otherwise. The latter three points are all legal conclusions or "ultimate issues" based on factual allegations not including a defective securitization process; they are not factual allegations as required by *Lucido*. Deutsche Bank's first point—that Mr. Ratliff failed to establish that he tendered the outstanding loan amount— appears to be a factual allegation. However, Deutsche Bank indicates that this holding derives from this line in an appellate opinion: "Here, appellant failed to allege—and does not assert that he

8

can amend the FAC to allege—that he was willing and had the present ability to tender the full amount of indebtedness . . . ." Reply at 5 (quoting *Ratliff v. EMC Mortgage, LLC*, 2013 WL 6330653 (Cal. App. Dec. 5, 2013)). It therefore does not appear that Mr. Ratliff's failure to tender was a factual allegation so much as a *lack* of a factual allegation. At the very least, given the lack of allegation, it does not appear that the issue was actually litigated, and it therefore fails the third requirement of issue preclusion.[1]

2. Conclusion

Because the issues in the prior cases and this case are not identical, issue preclusion does not bar Mr. Ratliff's claims.

D. Statute of Limitations

A motion to dismiss may be based on the statute of limitations "when the running of the statute is apparent from the face of the complaint." *Baldain v. Am. Home Mortg. Serv'g, Inc.*, No. CIV. S-09-0931 LKK/GGH, 2010 WL 56143, at *4 (E.D. Cal. Jan. 5, 2010) (internal quotation marks omitted) (quoting *Conerly v. Westinghouse Elect. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980)). Here, Mr. Ratliff's claims against Deutsche Bank stem from the October 2007 foreclosure of the Oakland property. He initiated this suit on April 18, 2017. Mr. Ratliff has identified no cause of action with a statute of limitations longer than nine years. The statutes of limitations therefore bar his claims.

Attempting to avoid the statutes of limitations, Mr. Ratliff invokes the delayed discovery rule and equitable tolling. As in the prior motions to dismiss, Mr. Ratliff argues that the Court should toll the statutes of limitations, because he could not have timely discovered the facts that prompted this suit, namely that his loan was transferred into the Impac Trust for securitization. Opp. at 9-10. As before, Mr. Ratliff's invocation is entirely conclusory. Mr. Ratliff was not

---

[1] Mr. Ratliff, apparently confused, argues that the fourth requirement is not met because Deutsche Bank was not in privity with the state-court parties. *See* Opp. at 8-9. With respect to issue preclusion, "[o]nly the party *against whom* the doctrine is invoked must be bound by the prior proceeding." *DKN Holdings*, 61 Cal. 4th at 825 (emphasis in original) (quoting *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 828 (1999)). "[I]ssue preclusion can be invoked by one not a party to the first proceeding." *Id.* at 826. Mr. Ratliff was party to the state suits, and this requirement for invoking issue preclusion against him may be satisfied.

prevented from commissioning earlier the forensic audit that revealed the securitization of his loan, and he has not argued that such an audit is not within the ambit of due diligence. *See* Chase Order at 7-8. In other words, Mr. Ratliff has not shown that he should not have known of the wrongful foreclosure based on a lack of ownership interest at the time he filed the state lawsuits. *See* Chase Order at 11-12.

E. <u>Failure to State a Claim</u>

In addition to claim preclusion and the statutes of limitations, Mr. Ratliff's wrongful foreclosure and UCL claims suffer from various defects.

    1. <u>Wrongful Foreclosure</u>

In addition to the arguments addressed above, Deutsche Bank argues that the wrongful foreclosure claim fails for three reasons: (1) Mr. Ratliff has not alleged that Deutsche Bank engaged in foreclosure activity, (2) the loan was properly transferred into Deutsche Bank, and (3) Mr. Ratliff does not have standing to challenge an untimely loan transfer in any case. Because the first and third arguments succeed, while the second argument relies on facts outside of the Complaint, the Court addresses only the first and third arguments.

As to the first argument, Mr. Ratliff's only substantive response is that Deutsche Bank "acknowledges that they acquired Plaintiff's loan and that it 'sold Plaintiff's loan to EMC Mortgage on July 27, 2007.' (Doc. No. 43). In fact, this 'sale' of Plaintiff's loan was the completed foreclosure proceeding that . . . presumably occurred at Deutsche's direction and through its agents, MERS, First American and Executive Trustee." Opp. at 10.[2] There are several problems with this argument. First, Deutsche Bank did not admit that it sold the loan to EMC Mortgage. The docket number that Mr. Ratliff cites is a Joint Case Management Statement filed by Mr. Ratliff and *Impac*. Therein, Impac writes that "*Impac* sold Plaintiff's loan to EMC Mortgage on July 27, 2007." Docket No. 43 at 3 (emphasis added). Second, a sale of a loan is not

---

[2] Mr. Ratliff also argues that he "has clearly affirmatively plead facts demonstrating the impropriety of Defendant to conduct the 2007 foreclosure, through Plaintiff's adducing of the 2017 letter from Chase in which Chase claimed ownership of Plaintiff's loan and further represented that such loan could be reaffirmed." Opp. at 10 (internal quotation marks omitted). However, Chase's letter does not indicate any improper foreclosure activity by Deutsche Bank.

a foreclosure. It appears that Impac sold the *loan* to EMC in July. In August, ETS as trustee recorded the notice of trustee's sale. It then sold the *property* to EMC in October—this sale being the contested foreclosure. Third, the complained-of foreclosure activity was conducted by MERS and ETS. Any liability that flows from MERS and ETS to Deutsche Bank via an agency relationship would be subject to claim preclusion as described, *supra*.

As to Deutsche Bank's third argument, as noted in the Court's order dismissing Impac, *see* Impac Order at 15-17, Mr. Ratliff does not have standing to challenge the alleged post-closing transfer of his loan. Under California law, a plaintiff alleging wrongful foreclosure has standing to challenge a transfer that is void—that is, void *ab initio*—but not one that is voidable, as in ratifiable. *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 939 (2016). Mr. Ratliff has alleged no facts regarding the governing law on the question of whether the timing problem made the transfer void or voidable. Because nonjudicial foreclosures are presumed to be properly conducted, a party challenging such a foreclosure must plead affirmative facts demonstrating improper action. *See Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th at 270. This burden includes the burden to plead facts demonstrating standing. *See Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 813-14 (2016). Nevertheless, judicially noticeable facts indicate that the trust agreement was formed under Delaware law. *See* Def's RJN, Ex. K at § 10.11. Delaware law does not use the void/voidable distinction in the foreclosure context. However, Delaware courts are clear that "the debtor lacks standing to contest the validity of an assignment of its note on the grounds that the [agreement]'s terms were not followed by the parties involved in the transfer," where this violation of the agreement's terms does not affect a debtor's ability to pay on the underlying loan, and the debtor is not a third party beneficiary to the agreement. *Toelle v. Greenpoint Mortg. Funding, Inc.*, No. S14C-05-035, 2015 WL 5158276, at *4 (Del. Super. Ct. Apr. 20, 2015); *see also Nationstar Mortg., LLC v. Sears*, S14L-06-002 (RFS), 2015 WL 4719941, at *4-5 (Del. Super. Ct. Aug. 7, 2015). Further, where the mortgagee is undisputedly in default, foreclosure even by one purportedly not in possession of the mortgagee's loan "cannot be said to have caused [the debtor] injury," because "[the debtor's] home would be subject to foreclosure even absent [the alleged fraudulent assignment]." *CitiMortgage, Inc. v.*

11

*Bishop*, 09L-07-313CLS, 2013 WL 1143670, at *4 (Del. Super. Ct. Mar. 4, 2013) (alterations in original) (quoting *Dehdashti v. The Bank of New York Mellon*, 1:12-cv-595-TCB (D. Ga. June 7, 2012); *see JPMorgan Chase Bank, v. Smith*, S13L-08-003 (RFS), 2014 WL 7466729, at *4-5 (Del. Super. Ct. Dec. 15, 2014). In addition, "numerous courts," including California courts, agree with the Delaware courts, holding that borrowers lack standing to challenge a securitization process to which they are not party. *Hosseini v. Wells Fargo Bank, N.A.*, No. C-13-02066 DMR, 2013 WL 4279632, at *3 (N.D. Cal. Aug. 9, 2013); *see Sami v. Wells Fargo Bank*, No. C 12-00108 DMR, 2012 WL 967051, at *5 (N.D. Cal. Mar. 21, 2012) (collecting additional cases).

Mr. Ratliff advances two unconvincing arguments.[3] First, he notes that the Delaware Code requires trustees "to act or to refrain from acting so as not to subject the trust to" various taxes. *See* Opp. at 14-15 (citing 12 Del. C. § 3540). He then implies that a violation of § 3540 would be an *ultra vires* act and therefore void, but he states no specifics facts establishing a violation of § 3450. He also ignores the case law specifically holding one in his position has no standing to challenge the alleged imperfection in securitization alleged here. *See id.* Mr. Ratliff's second argument merely reminds the Court to apply California law on standing, not federal or Delaware law. *See* Opp. at 15-16.

Mr. Ratliff has failed to show that the allegedly untimely loan transfer is void under Delaware law, and the great weight of California and Delaware law is against finding standing for borrowers challenging the securitization of their loans. Mr. Ratliff therefore failed to meet his burden under *Fontenot* and *Saterbak* to demonstrate his standing to challenge the securitization of his loan.

2. Violation of § 17200

In addition to the statute of limitation defense, Deutsche Bank argues that the § 17200 claim should be dismissed for a variety of reasons. *See* Mot. at 22-24. Mr. Ratliff's only response is grounded in his wrongful foreclosure claim. *See* Opp. at 17. Because the wrongful foreclosure claim fails, the § 17200 claim is dismissed.

---

[3] In addition, Mr. Ratliff writes at length about New York courts' interpretation of an irrelevant New York statute. Opp. at 12-14.

12

## IV. CONCLUSION

For the foregoing reasons, each of Mr. Ratliff's claims against Deutsche Bank are dismissed. Because amendment would be futile for the reasons stated above, the claims are **DISMISSED** with prejudice.

This order disposes of Docket No. 60.

**IT IS SO ORDERED**.

Dated: December 22, 2017

EDWARD M. CHEN
United States District Judge